CUMMINGTON REALTY ASSOCIATES *vs.* CHARLES E. WHITTEN.

Suffolk.   May 23, 1921. — July 2, 1921.

Present: RUGG, C. J., BRALEY, DE COURCY, CROSBY, & PIERCE, JJ.

*Corporation,* Dissolution.   *Landlord and Tenant,* Termination of lease.   *Arbitrament and Award.*   *Practice, Civil,* Arbitration proceedings.

The owner of certain real estate, which was subject to a lease to a Massachusetts corporation, refused to relieve the corporation from further liability as lessee, stating that he "intended at all times" to hold it as lessee.   The corporation then sublet the premises as permitted by its lease and thereafter, when there were still unexpired over seven years of the term of the lease, the corporation was dissolved by special act of the Legislature, all its debts having been paid and its only asset being the lease and there being but two nominal and one real stockholder.   The owner did not learn of the dissolution until more than three years and nine months thereafter.   In the meantime the rent reserved by the lease had been paid promptly each month by the sole stockholder in interest either by indorsement to the owner of a check of the subtenant or by a check bearing the signature of the lessee corporation signed by the sole stockholder in interest as treasurer, and the rent continued to be so paid and received for several months when the owner, learning of the dissolution of the corporation and discovering that a lease of the premises might be made at an advance in rent, contended that upon the expiration of three years from the dissolution of the corporation the lease was terminated and asserted a right to make a new lease independently of the rights of the sole stockholder in interest.   There had been no agreement on the part of the lessee to abandon nor on the part of the owner to resume possession of the demised premises, and no surrender of the lease by conduct of the parties.   *Held,* that

(1) The expiration of three years after the dissolution of the lessee corporation in the circumstances did not terminate the lease;

(2) The owner's ignorance of the dissolution for three years and nine months was of no consequence;

(3) The stockholders of the lessee corporation as owners in common upon the dissolution succeeded to the title and interest of the corporation subject however to all the obligations imposed on the lessee by the terms of the lease, and could enforce those rights by proceedings in equity, where appropriate relief could be decreed.

The controversy above described was referred to an arbitrator under R. L. c. 194. His report, besides reporting the facts above described, stated that, pending the controversy, the owner had leased the premises to the new tenant at the advanced rent and was receiving the rent subject to an agreement that a division would be made in a certain ratio to be determined by the result of the proceeding; and, subject to confirmation or reversal by the court, he ruled that the lease to the corporation was terminated by the expiration of three years after the corporation's dissolution, that, if that ruling were wrong, the sole stockholder in interest had succeeded to such rights as remained in the lessee and had become the owner of them, and that, except through a receiver of the lessee corporation, the sole stockholder in interest could not enforce his rights under the lease.   Upon the

filing of the report in the Superior Court, a judge ordered an entry that the "award of the arbitrator" was "accepted," but no order was made confirming either the submission or the award, and the judge reported the case to this court for determination. This court, having decided that the ruling that the lease was terminated was erroneous, *held*, that the only entry that could be ordered by this court on the record was, judgment for the sole stockholder in interest, the question, whether the matter should be recommitted and the arbitrator instructed to state definitely the amount due to the sole stockholder in interest so that a money judgment may be entered in his favor, not being before this court on the record.

ARBITRAMENT under R. L. c. 194. The report of the arbitrator was filed in the Superior Court on March 3, 1921.

The agreement of arbitration was dated April 29, 1920, and, exclusive of the signatures of the parties and the acknowledgment before a justice of the peace, was as follows:

" Know all men that Henry M. Williams, Ezra H. Baker and Philip R. Hovey as they are Trustees of the Cummington Realty Associates, and Charles E. Whitten of Lynn, for himself and the interests he represents as shown by the agreement hereinafter referred to, hereby agree to submit the demand and controversy stated in the collateral agreement hereto annexed, dated March 4, 1920, to the determination of [the arbitrator named,] the award of whom, being made and reported within one year from this day to the Superior Court for the County of Suffolk, the judgment thereon shall be final; and if either of the parties neglects to appear before the arbitrator, after due notice given to him of the time and place appointed for hearing the parties, the arbitrator may proceed in his absence."

The "collateral agreement" above referred to was dated March 4, 1920, was between the above described trustees of the Cummington Realty Associates and Charles E. Whitten and in substance read as follows:

" Whereas by indenture of lease dated May 5, 1913, Charles Paine of Boston, Massachusetts, leased to the Whitten-Gilmore Company, a Massachusetts corporation, certain premises at 620 Commonwealth Avenue in said Boston, . . . for a period of ten years from October 1, 1913, and

" Whereas on May 23, 1913, said Paine executed an agreement under seal to and with the Chalmers Motor Company, a Michigan corporation, duly confirmed by the directors of said company, . . . and

" Whereas on August 1, 1914, said Whitten-Gilmore Company sublet to the Chalmers Motor Company of Massachusetts, a Massachusetts corporation, the said premises covered by the aforesaid lease for a period of nine years, one month, twenty-nine days being one day less than the said term of ten [years] covered by said original lease, . . . and

" Whereas said Whitten-Gilmore Company was dissolved by the Legislature of Massachusetts on February 21, 1916; and said Chalmers Motor Company of Massachusetts was dissolved by said Legislature March 8, 1917, at which time of dissolution of the Whitten-Gilmore Company the stockholders were said Charles E. Whitten and Ernest A. Gilmore late of Newton, Massachusetts, deceased, and

" Whereas the said trustees, being the successors in title of the said Charles Paine and the present owners of the premises mentioned in said Lease believing that all rights under said lease have now ceased and determined, desire to execute a new lease commencing on or about April 1, 1920 for a period of ten years thereafter including in said period of necessity the balance of the specified term in said Whitten-Gilmore Company lease and said Whitten claiming to be the beneficial owner of the right, title and interest of the Whitten-Gilmore Company and of the Chalmers Motor Company of Massachusetts, and of the Chalmers Motor Company of Michigan in connection with said premises desires to co-operate in the making of such new lease but claims that said Whitten-Gilmore Co. lease is in force, hence that in such event for the balance of said original lease, to wit, until October 1, 1923, he is entitled to sub-let said premises and to receive a just proportion of the difference between the rental in said Whitten-Gilmore Company lease and the rental now to be obtained on a new lease, for such period and both parties desire to have their rights adjudicated without recourse to litigation.

" Now, therefore, in consideration of the mutual undertakings herein contained it is agreed:

" First: Said Whitten for himself and the interest he represents consents to the making of such new lease and so far as necessary agrees to join therein upon request by said trustees to the end that the best possible return may be had from said premises pending the determination of the rights of the parties therein.

" Second: The said trustees agree that the rights of said Whitten and of the interests he represents shall be considered and adjudicated for all purposes as of March 4, 1920, with the same force and effect as if he had commenced such proceedings at law or in equity as were open to him on said date and had by appropriate proceedings preserved such rights as he then had, including those which would have been possessed by or preserved by the appointment of a receiver of the Chalmers Motor Company of Massachusetts under and by virtue of St. 1903, c. 437, as amended, and that there shall inure to said Whitten such rights or benefits as such receiver, if he had been successfully applied for and had been appointed, could have obtained by appropriate proceedings including the extension in point of time of the existence of said Chalmers Motor Company of Massachusetts by appropriate order of Court.

" Third: It is further agreed that if it shall appear, that said Whitten in behalf of himself or of the interests he represents (and it is agreed that included among those interests are the estate of said Ernest A. Gilmore and the joint interest of said Whitten and said Gilmore as partners or otherwise as their rights may appear) is entitled to hold said premises by virtue of the existing state of things on said date and so is entitled at law or in equity to a just proportion of the difference or increase in rental value as above stated, the said trustees undertake to pay such difference or increase in said rental value to said Whitten when and as received. If said Whitten is not so entitled the said trustees may retain such increased rental received by them for their own use as such trustees.

" Fourth: It is further agreed that the rights of said parties upon the facts as herein stated and any other facts competent or material thereto, particularly the facts concerning payment of rent and the occupation of the property up to the present time shall be referred to arbitration under the statutes of Massachusetts in such case made and provided and that an appropriate agreement of reference under said statutes shall be executed by the parties in due course and within sixty days from date."

Material portions of the report of the arbitrator were in substance as follows:

On or about May 5, 1913, Charles Paine, then the owner of

premises located on Commonwealth Avenue and Cummington Street in Boston, leased them for the term of ten years to the Whitten-Gilmore Company, a Massachusetts corporation. The tenancy was to begin October 1, 1913, and to expire September 30, 1923. The stipulated annual rental was $12,400.

On May 23, 1913, Paine and the Chalmers Motor Company, a Michigan corporation, entered into an agreement providing that the Chalmers Motor Company should become the tenant of the premises under the lease above referred to in case the Whitten-Gilmore Company should for any reason cease before the expiration of the ten years to be the tenant. The original lease did not permit the tenant to assign but did permit the tenant to sublet.

On May 5, 1913, Charles Paine assigned his interest in the original lease and in the agreement of May 23, 1913, to Henry M. Williams, Ezra H. Baker and Philip R. Hovey, trustees of the Cummington Realty Associates.

For some time after the original lease was entered into the Whitten-Gilmore Company either paid the rent from its own funds or collected the rent from the Chalmers Motor Company of Massachusetts and sent its check to Williams, the managing trustee of the Cummington Realty Associates. On July 31, 1914, the Whitten-Gilmore Company notified Williams as follows: "This letter will advise you that from this date the Chalmers Motor Company becomes the tenant for the remainder of the term of the lease according to memorandum of agreement attached to the lease." This reference was to the memorandum of May 23, 1913, referred to above.

It was the intention at this time of the Whitten-Gilmore Company, of which the defendant Charles E. Whitten was the treasurer, to end its obligation under the lease and substitute the Chalmers Motor Company. On August 5, 1914, Williams, for the trustees, wrote to the Whitten-Gilmore Company declining to accept a cancellation of the lease or an assignment of it to the Chalmers Motor Company of Massachusetts unless a bond of substantial amount was given to the trustees to secure the payment of the rent, or unless a payment of $2,000 in cash was made for the privilege of making the transfer. The letter contained the following paragraph: "If you do not care to make this arrange-

ment and make a sub-lease to the Chalmers Motor Company of Massachusetts we shall take such measures as are necessary to see that the Whitten-Gilmore Company continues in existence and that its assets are not dissipated until after the lease shall have terminated and its obligation to us at an end."

In August of 1914 Williams at the request of the Chalmers Motor Company prepared a sublease to the Chalmers Motor Company of Massachusetts from the Whitten-Gilmore Company, which was executed and delivered by the parties on or about August 1, 1914, was to run for nine years, one month and twenty-nine days from its date and was to expire September 29, 1923. The rental was $12,400 a year, the same amount provided in the original lease.

In the years 1916–1917, Williams, acting for the Associates, learned that there were some changes taking place in the organization of the Chalmers Motor Company (not the Chalmers Motor Company of Massachusetts), and had some correspondence with the officers of that company at Detroit with the intention of finding out whether the tenant then occupying the premises under the sublease was likely to continue as a tenant. " The Whitten-Gilmore Company had then ceased to do anything with relation to the property but collect the rent from the sub-tenant and send it each month to Williams, sometimes sending the check of the Whitten-Gilmore Company, sometimes the check of the sub-tenant." The subtenant changed from time to time and the premises were occupied in succession by the Chalmers Motor Company of Massachusetts, Chalmers Motor Company of New England and the C. E. Fay-Allen Company. The rent was at all times paid promptly.

On February 21, 1916, the Whitten-Gilmore Company with its own consent was dissolved by the Legislature, Spec. St. 1916, c. 112. The dissolution was in the usual form, and the provisions of the Massachusetts statute to keep a corporation alive for certain purposes for a term of three years are applicable. The dissolution was not known to any of the trustees of the Associates until about October 28, 1919, or after the three years had expired.

Whitten and the estate of Ernest A. Gilmore, who had died, then and at all times owned all of the stock of the Whitten-Gilmore Company and own it at the present time. The fact that the

Whitten-Gilmore Company had been dissolved was known to Whitten but he did not communicate the information to any of the trustees but continued at all times to collect the rent of the subtenant, at that time the C. E. Fay-Allen Company, and to remit it promptly to the trustees. Checks payable to the Whitten-Gilmore Company he indorsed over as treasurer to the Cummington Associates just as he had done before the dissolution. In this respect and in all other respects, unless the corporation's dissolution is a cancellation of the lease, the Whitten-Gilmore Company complied with its terms.

On March 8, 1917, the Chalmers Motor Company of Massachusetts was also dissolved by the Legislature in the usual form. Spec. St. 1917, c. 157. The Michigan company known as the Chalmers Motor Company was also dissolved in Michigan under date of January 3, 1918.

" It was admitted that during the period 1914–1919 the Whitten-Gilmore Company made several attempts to be relieved of further liability under the lease and that its officers and stockholders would have been glad to be relieved by having the lease cancelled, or by having a sub-tenant accepted as a new lessee. It is also agreed that the trustees of the Associates were aware of this desire on the part of the Whitten-Gilmore Company to cancel the lease and the trustees declined to permit it to be cancelled, and intended at all times to hold the Whitten-Gilmore Company. This intention they expressed to the Company on at least two occasions. In other words, the attitude of the trustees continued to be that expressed in Williams' letter of August 5, 1914, above referred to in this report."

In the spring of 1920 the C. E. Fay-Allen Company, the occupant of the premises, moved. This removal had been previously planned by the latter company and one of its officers had notified Mr. Williams of the intended removal. Before it actually took place, however, Williams, for the trustees, wrote the C. E. Fay-Allen Company under date of December 27, 1919, notifying it to quit the premises March 1, 1920. This letter contained the statement that the trustees would look solely to the C. E. Fay-Allen Company for the rent. The company is described in the letter as a" tenant at will."

The removal of the C. E. Fay-Allen Company left the premises

unoccupied. The rent at the rate required by the old lease was paid in the way above described to May 15, 1920. This left an unexpired balance of the term of the original lease of three years, four months and fifteen days with the Whitten-Gilmore Company dissolved and the building physically unoccupied.

" At the time that the C. E. Fay-Allen Company moved from the building the trustees had known for some months that the Whitten-Gilmore Company had been dissolved. Just when they learned of the dissolution did not appear but it was prior to December 27, 1919. At about the time of the removal a new party appeared and offered to take a lease of the premises at an increase in the rental over the $12,400 paid up to that time of $2,775 a year. This figure is the result of a computation made necessary by the fact that the new lease covers other space in addition to that covered by the original lease.

" The parties to this action had now shifted their positions. The trustees claimed that the dissolution of the Whitten-Gilmore Company operated as a cancellation of the lease so that the trustees were entitled to make a new lease and take advantage for themselves of the additional rental. The stockholders of the Whitten-Gilmore Company claimed that it was too late for the trustees to take this position and that they were entitled to sub-let to the new tenant. The stockholders further claimed that by the operation of law the corporation's interest in the lease as an asset of the company had become the property of the stockholders and that they were, therefore, entitled to continue as tenants, sub-let to the new tenant, pay the old rental and keep the annual difference of about $2,775." They further pointed out that under the agreement of May 23, 1913, between Paine and the Chalmers Motor Company (of Detroit), if the lease became inoperative, the Chalmers Motor Company (of Detroit) became the tenant for the balance of the term. " The parties thereupon agreed, without prejudice, to the making by the trustees of a lease to the new tenant at the increased rental and submitted the questions growing out of the facts above found to arbitration.

" It is agreed that the amount of money involved is the additional rental for the period from May 15, 1920, to September 30, 1923, the expiration of the original lease, and that it may be taken for the purpose of the arbitration as $231.25 per month, or for the period

$9,365. By the terms of the agreement for arbitration (see paragraph fourth) the plaintiffs may, however, in the event of a decision against them, discharge their obligations in full by paying 'such difference or increase in said rental value when and as received.'

" It is admitted that no formal instrument conveying the rights of the Whitten-Gilmore Company under the original lease to its stockholders or any one else was ever executed or delivered, and there was no evidence that the corporation or its directors ever at any meeting passed any vote or votes attempting to dispose to anybody of the corporation's interest in the lease.

" I am unable to find that the conduct of the parties constituted a surrender of the lease. In other words, I find no agreement on the part of the tenant to abandon and on the part of the landlord to resume possession of the demised premises.

" The agreement for arbitration contains, among others, three stipulations that should be noticed: (1) The rights of Whitten shall be considered and adjudicated as of March 4, 1920, and (2) as if he had commenced such proceedings at law or in equity as were open to him on that date, and (3) they shall include those rights which would have been possessed by or preserved by the appointment of a receiver of the Chalmers Motor Company of Massachusetts, and such rights and benefits as such receiver if appointed could have obtained. There is nothing in the agreement which specifically preserves such rights as might have been or might now be secured for him by the appointment of a receiver of the tenant corporation the Whitten-Gilmore Company."

The arbitrator made rulings of law, subject to confirmation or reversal by the court, as follows:

" I rule that the expiration of the three years after the dissolution of the corporation terminated the lease and that the trustees were therefore free to make a new one with a new tenant and retain the proceeds." Contingent upon the foregoing ruling being incorrect, he ruled that, if there were any rights remaining in the tenant, there being no evidence of any unpaid debts, Whitten succeeded to and became the owner of them; and that, except through a receiver of the Whitten-Gilmore Company, Whitten could not enforce the rights of stockholders in the lease.

By order of *Wait*, J., the "award" of the arbitrator was "ac-

cepted" and, at the request of the parties, the case was reported to this court for determination.

St. 1903, c. 437, §§ 52, 53, 54 (see now G. L. c. 155, §§ 51, 52, 53), read as follows:

" Section 52. Every corporation whose charter expires by its own limitation or is annulled by forfeiture or otherwise, or whose corporate existence for other purposes is terminated in any other manner, shall nevertheless be continued as a body corporate for three years after the time when it would have been so dissolved, for the purpose of prosecuting and defending suits by or against it and of enabling it gradually to settle and close its affairs, to dispose of and convey its property and to divide its capital stock, but not for the purpose of continuing the business for which it was established.

" Section 53. If the charter of a corporation expires or is annulled, or if the corporation is dissolved, or if a judgment has been recovered against it, and it has neglected, for thirty days after demand made on execution, to pay the amount due, with the officer's fees, or to exhibit to the officer real or personal property belonging to it and subject to be taken on execution, sufficient to satisfy the same, and the execution has been returned unsatisfied, the Supreme Judicial Court or the Superior Court shall have jurisdiction in equity upon application of a creditor or stockholder to appoint one or more receivers to take charge of its estate and effects and to collect the debts and property due and belonging to it; with power to prosecute and defend suits in its name or otherwise, to appoint agents under them and to do all other acts which might be done by such corporation, if in being, which may be necessary for the final settlement of its unfinished business. The powers of such receivers may be continued as long as the court finds necessary for said purposes.

" Section 54. The receivers shall pay all debts due from the corporation if the funds in their hands are sufficient therefor; and if they are not, they shall distribute them ratably among the creditors, who prove their debts in the manner directed by any decree of the court for that purpose. If there is a balance remaining after the payment of the debts, the receivers shall distribute and pay it to those who are justly entitled thereto as having been stockholders of the corporation, or their legal representatives."

The case was submitted on briefs.

*H. H. Fuller & D. T. Gallup,* for the plaintiff.

*G. L. Mayberry & A. P. Teele,* for the defendant.

BRALEY, J. The arbitrator having stated "that his rulings of law shall not be final and that they shall all be subject to review on appeal or other proper proceedings by either party," his rulings are presented by the report of the trial court which, having "accepted" the award, reported the case to this court at the request of the parties. *Ellicott* v. *Coffin,* 106 Mass. 365. *Carter* v. *Carter,* 109 Mass. 306, 309. *Rogers* v. *Mayer,* 151 Mass. 279, 280. R. L. c. 194, § 12; c. 173, § 105, as amended by St. 1910, c. 555, § 5, St. 1917, c. 345 (see now G. L. c. 231, § 111).

The material questions are, " First. Did the expiration of the three year period after the dissolution by statute of the Whitten-Gilmore Company end all the rights of this tenant corporation and those claiming under it.to make any claims whatever under the lease itself ? " " Second. If not, has Mr. Whitten, representing all the stockholders of the Whitten-Gilmore Company and by the arbitration agreement, holding all the rights a receiver of the Chalmers Motor Company of Massachusetts might have secured for him, succeeded to those rights? " " Third. If he has, may he enforce them in these proceedings ? "

The arbitrator under the first question ruled, "that the expiration of the three years after the dissolution of the corporation terminated the lease and that the trustees were therefore free to make a new one with a new tenant and retain the proceeds." We are of opinion that the ruling was wrong. The rent secured by the lease has been punctually paid, after as well as before dissolution, and accepted by the plaintiff who succeeded to the reversion. It is expressly found that before dissolution the lessee, hereafter called the corporation, sought to be relieved from further liability by cancellation of the lease, but the plaintiff declined to cancel, and "intended at all times" to hold the lessee. The plaintiff's ignorance of the dissolution until three years and nine months had elapsed, when it contended that the lease had been abrogated by operation of law and it was entitled to relet the premises, is of no consequence. If the lease had thus been terminated, the subsequent payment and acceptance of rent without knowledge of the dissolution could not deprive the plaintiff of

its legal rights. The lessee was a domestic corporation and although dissolved by Spec. St. 1916, c. 112, all debts had been paid and its only asset was the lease in question, the unexpired term of which of over three years was valuable, because the lessee could sublet at a large advance over the rent reserved. The arbitrator having reported that he is "unable to find that the conduct of the parties constituted a surrender of the lease," and "I find no agreement on the part of the tenant to abandon and on the part of the landlord to resume possession of the demised premises," these findings of fact are conclusive.

The plaintiff's principal argument, however, is, that upon dissolution the leasehold estate at once reverted. The arbitrator rested his decision on *Hastings Corp.* v. *Letton*, [1908] 1 K. B. 378, which is strongly relied on by the plaintiff. It was there held that a lease to a corporation for a term of years terminated if the corporation was dissolved without having assigned the lease, and the reversion accordingly was accelerated and the premises reverted to the lessor. It does not appear that the question of the equitable rights of the stockholders was raised or considered. The question determined was, whether, under the circumstances, the corporation and lessee having ceased to exist, its rights went to the crown or to the lessor. We are unable to assume that the lease in the case at bar contained an implied condition, that it should determine if the corporation did not survive the term. It was said in *Folger* v. *Columbian Ins. Co.* 99 Mass. 267, 276, 277, "the dissolution of a corporation cannot deprive its creditors or stockholders of their rights in its property; and if the common law affords them no adequate remedy, they may obtain relief in equity. *Bacon* v. *Robertson*, 18 How. 480, 485–487, and cases cited. *Lum* v. *Robertson*, 6 Wall. 277." The governing principle is also well stated in *Mormon Church* v. *United States*, 136 U. S. 1, 47, "When a business corporation, instituted for the purposes of gain, or private interest, is dissolved, the modern doctrine is, that its property, after payment of its debts, equitably belongs to its stockholders."

If the charter had been repealed, the obligation of the corporation's contracts during its existence would not have been impaired, nor the stockholders estopped from asserting their rights against its property in accordance with the general principles

and practice in equity. *Thornton* v. *Marginal Freight Railway,* 123 Mass. 32, 34, and cases cited. The result is the same upon dissolution. *Allen-Foster-Willett Co. petitioner,* 227 Mass. 551, 556. It is settled, that upon dissolution, all debts having been paid and discharged and no receiver having been appointed, the corporation's property of every description then belongs to the different stockholders as tenants or owners in common. It is a trust fund which equity will protect for their benefit. *Folger* v. *Columbian Ins. Co., supra. Thornton* v. *Marginal Freight Railway, supra. Allen-Foster-Willett Co. petitioner, supra. Bacon* v. *Robertson, supra. Detroit* v. *Detroit Citizens Street Railway,* 184 U. S. 368, 394. *Minneapolis* v. *Minneapolis Street Railway,* 215 U. S. 417, 430. 7 R. C. L. Corporations, § 750, and cases cited in note 14.

The plaintiff cites *Boston Tow Boat Co.* v. *Medford National Bank,* 228 Mass. 484. But, that action having been brought more than three years after dissolution of the plaintiff corporation, it was held that, having ceased to exist even for purposes of litigation, 'no decree could be entered for or against it. It is not an authority supporting the plaintiff's contention that the leasehold estate ceased to exist both at law and in equity.

It follows that by operation of law the stockholders as owners in common have succeeded to the title and interest of the corporation, subject however to all the obligations imposed on the lessee by the terms of the lease, and can enforce those rights by proceedings in equity where appropriate relief can be decreed. The provisions of R. L. c. 109, §§ 53, 54, as codified in St. 1903, c. 437, §§ 52, 53 (see now G. L. c. 155, §§ 51, 52), are not applicable, as more than three years have expired since the date of dissolution. *Allen-Foster-Willett Co. petitioner,* 227 Mass. 551, 556. See *Boston Tow Boat Co.* v. *Medford National Bank,* 228 Mass. 484; *S. C.* 232 Mass. 38, 40.

The plaintiff not being entitled to prevail, the remaining question is, what measure of relief can be accorded the defendant. The premises under agreement of parties have been sublet, the rent being received and held by the plaintiff under a stipulation in the agreement incorporated in the reference to the arbitrator, which reads as follows: " It is further agreed that if it shall appear that said Whitten in behalf of himself or of the interests he represents (and it is agreed that included among those interests are the estate

of . . . Ernest A. Gilmore and the joint interest of said Whitten and said Gilmore as partners or otherwise as their rights may appear) is entitled to hold said premises by virtue of the existing state of things . . . and so is entitled at law or in equity to a just proportion of the difference or increase in rental value . . . the said trustees," meaning the plaintiff, "undertake to pay such difference or increase in said rental value to said Whitten when and as received. If said Whitten is not so entitled the said trustees may retain such increased rental received by them for their own use as such trustees." It is urged that under the immediately preceding stipulation, "The said trustees agree that the rights of said Whitten and of the interests he represents shall be considered and adjudicated for all purposes as of March 4, 1920, with the same force and effect as if he had commenced such proceedings at law'or in equity as were open to him on said date and had by appropriate proceedings preserved such rights as he then had, including those which would have been possessed by or preserved by the appointment of a receiver of the Chalmers Motor Company of Massachusetts under and by virtue of St. 1903, c. 437, as amended, and that there shall inure to said Whitten such rights or benefits as such receiver, if he had been successfully applied for and had been appointed, could have obtained by appropriate proceedings including the extension in point of time of the existence of said Chalmers Motor Company of Massachusetts by appropriate order of court," the defendant can be given relief to the same extent as if he had brought a bill in equity.

The submission is in the form prescribed by R. L. c. 194, § 2 (see now G. L. c. 251, § 2), which embraces by § 1 not only controversies which might be the subject of a personal action at law, but of a suit in equity, and, under § 10, when accepted and confirmed by the court, "judgment shall be rendered thereon as upon a like award by referees." The award therefore must be such that a judgment can be rendered upon it which can be enforced by the trial court. *Blood* v. *Robinson,* 1 Cush. 389, 390. The award has been accepted, but not confirmed, and the only entry which can be made on the record is judgment for the defendant. The question, whether it should be recommitted and the arbitrator instructed to state definitely the amount due the defendant, so that a money judgment can be entered against the plaintiff, is

not before us. *Giles* v. *Royal Ins. Co.* 179 Mass. 261, 268. *Terry* v. *Brightman*, 132 Mass. 318.

*So ordered.*