Locke, J.
The plaintiff, Judith Colecchi, brought this action against defendant Gould Title Company (“Gould”), asserting claims in negligence and breach of contract relating to a title report issued in June 1987 for certain real properly in Oxford. Gould, through its current owner and president, Larry Salem, brought a third-party claim for indemnification against Myrick, O’Connell, DeMallie & Lougee LLP, a law firm from which Salem bought the title company in 1997. Myrick-O’Connell in turn asserted a third-party claim against Joseph Boynton, an attorney who certified the title report in 1987.
Gould has filed a motion for summary judgment, joined in by third-party defendants, asserting that the plaintiff lacks standing to sue, that the action is barred by the statute of limitations, and that there are no facts demonstrating negligence or a breach of contract. The matter was heard on October 4, 2004 and taken under advisement.
BACKGROUND
Fort Hill Development Associates, Inc. (“Fort Hill”) was formed in 1984 as a for-profit corporation. Judith Colecchi, an incorporator and shareholder, was president of the corporation.[2] On June 9, 1987, Fort Hill bought real property in the Town of Oxford from Serop and Helen Moscoffian for $103,600. According to the conveying instrument the property consisted of “A certain parcel of land, with the buildings thereon, situated in said Oxford in said county, containing one hundred (100) acres of land, more or less . . ."[3] The deed then contained a further description by boundaries, contained an easement for use of a well, and concluded with the language, “Excepting therefrom all property located north of Fort Hill Road, meaning and intending to convey 24.72+ acres of a total tract of 100+ acres.”
In connection with the land purchase, Fort Hill obtained a title report from defendant Gould Title Company, dated June 9, 1987, certifying that a title search over not less than 50 years showed good title in Fort Hill.[4] Gould Title Company, at the time, was a title abstract business owned by the Gould Realty Trust. Christine O’Brien was the trustee and signed the title certificate as did Attorney Joseph Boynton who performed the title examination. In 1989, Gould Really Trust sold Gould Title Company to the Worcester law firm of Myrick, O’Connell, DeMallie & Lougee, which later sold the business to Attorney Larry Salem.
Fort Hill ran into financial difficulties in the 1990s, leading to the placement of tax liens on the real estate. In May 1997, Fort Hill sold the property to a Michael J. Saad for $20,200. The deed referenced the parcel as the “same property deeded to the grantor by deed of Moscoffian,” and that it was being redeemed from the Town of Oxford (apparently the result of the tax lien). One month later, Saad conveyed the property to a Phillip Lanctot for $21,200. The deed was witnessed by Judith Colecchi, acting as notary public. By affidavit filed in connection with the motion for summary judgment, Colecchi asserts that Saad and Lanctot were acting on her behalf in loaning money to pay off the municipal tax lien and that in fact, Fort Hill and Colecchi retained an ownership interest in the properly.
In 1998, Fort Hill Development Associates was dissolved. Colecchi, as an officer, director and shareholder of the corporation, purported to acquire its assets. In 2002, she entered into a settlement agreement with Lanctot. The agreement referenced prior business relationships between the two and established a debt from Colecchi to Lanctot in the amount of $155,000. It further provided that Colecchi would pay Lanctot the proceeds from sales of two parts of the Oxford property. One of the contemplated sales was an 8,000 square foot parcel, to be sold to John and *382 Norma Wright. In connection with that transaction, the Wrights (through counsel) hired the Nelson & O’Connell Title Company to perform a title examination. By letter report dated September 20, 2002, Nelson & O’Connell reported that the properly description contained in the 1987 deed from Moscoffian to Fort Hill was fundamentally flawed, the result of misdescriptions in a series of deeds dating back to 1882 when the property was part of a single 150-acre farm. According to the Nelson & O’Connell survey, the 1987 deed was defective and did not convey title to anything.[5]
DISCUSSION
This court grants summary judgment where there are no genuine issues of material fact and, if viewing the entire record in the light most favorable to the non-moving parly, the moving parly demonstrates it is entitled to judgment as a matter of law. Mass.R.Civ.P. 56; Kourouvacilis v. Gen. Motors Corp., 410 Mass. 706, 711 (1991). See also Parent v. Stone & Webster Eng. Corp., 408 Mass. 108, 112 (1990) (reasoning that the moving party bears the burden of showing that there are no genuine issues of material fact and that it is entitled to judgment as a matter of law). A party moving for summary judgment that does not bear the burden of proof at trial may demonstrate the absence of a trial issue either by submitting affirmative evidence negating an essential element of the nonmoving party’s case or by showing that the non-moving party has no reasonable expectation of proving an essential element of its case at trial. Flesner v. Tech. Communications Corp., 410 Mass. 805, 809 (1991); Kourouvacilis v. Gen. Motors Corp., 410 Mass. at 716. The nonmoving party cannot defeat the motion for summary judgment by resting on his or her pleadings and mere assertions of disputed facts. LaLonde v. Eissner, 405 Mass, 207, 209 (1989). The court may consider the pleadings, affidavits, answers to interrogatories, depositions, and exhibits submitted in arriving at its conclusion on the motion. Mass.R.Civ.P. 56(c).
The defendant claims it is entitled to summary judgment on three distinct grounds. The Court will deal with each issue in turn.
Standing
First, the defendant claims that the plaintiff has failed to demonstrate that she has standing to bring suit. The claim is based on the fact that the property was a corporate asset belonging to Fort Hill and was sold in 1997 to a third party. In order to establish her right to sue, the plaintiff must demonstrate that she is “entitled to have the courts decide the merits of the dispute . . .” Warth v. Seldin, 422 U.S. 490, 498 (1975). “[I]t has been an established principle in this Commonwealth that only persons who have themselves suffered, or are in danger of suffering, legal harm can compel the courts to assume the difficult and delicate duty [of adjudicating disputes or particular issues].” Barbara F. v. Bristol Division of the Juvenile Court Department, 432 Mass. 1024, 1025 (2000) (citations omitted).
Colecchi asserts that she has standing based on her status as a shareholder of the now-defunct corporate entity. Fort Hill was the entity that contracted with Gould Title Company in 1987 and for whom Gould perform the title examination. Therefore, to the extent that Gould breached its contract or negligently failed to note a defect in the title to the Oxford property, Fort Hill unquestionably would have standing to bring Gould to account for its breach of duty. Fort Hill was incorporated in 1984 as a for-profit corporation under the laws of Massachusetts. As such it is govemed by the provisions of General Laws, Chapter 156B. In 1998, the secretaiy of state dissolved Fort Hill under the provisions of G.L.c. 156B, §101. By operation of law, the property of a dissolved corporation not otherwise distributed passes to its stockholders as tenants in common. Everett Credit Union v. Allied Ambulance Services, Inc., 12 Mass.App.Ct. 343, 348 (1981); Springfield v. Shaffer, 12 Mass.App.Ct. 277, 279 (1981); Cummington Realty Associates v. Whitten, 239 Mass. 313 (1921); 13 Massachusetts Practice Series, §8.4.[6] Therefore, to the extent Fort Hill had a right to bring an action against Gould for breach of contract or in negligence, that right, an intangible form of property, passed to Colecchi as a shareholder of the dissolved corporation in 2001 (three years after the involuntary dissolution),[7] thereby permitting the instant suit.
The defendant also contends that neither Colecchi nor Fort Hill has standing to bring suit because the real estate was sold twice since 1997. In response, Colecchi has filed an affidavit asserting that the two sales, to Saad in May 1997, and from Saad to Lanctot in June 1997, were in effect loans to the corporation and were not intended to divest Fort Hill of its beneficial interest in the property. Supporting her claim is a document entitled “Settlement Agreement” between Colecchi and Lanctot, dated September 9, 2002. The agreement identifies Colecchi “individually and as authorized representative of . . . Fort Hill Development Associates, Inc.”[8] In the agreement the parties agree that Colecchi is indebted to Lanctot in the amount of $155,000, and will pay her debt through the sale of portions of the Oxford property.
Colecchi’s characterization of the intended purpose of Fort Hill’s conveyance of title to Saad, and the subsequent conveyance to Lanctot, to secure loans made to the corporation, sounds more in the nature of a mortgage interest than the transfer of legal ownership. The deeds, however, are standard form quitclaim deeds that unambiguously convey full legal title to the respective grantees. Colecchi’s assertion, contained in her affidavit, would likely raise a significant question under the Statute of Frauds if challenged by Saad or Lanctot, but cannot be used by the defendant *383 here to challenge Colecchi’s standing. Despite a full year of litigation and a full opportunity for discovery, the defendant has not presented any evidence to rebut Colecchi’s assertion that Fort Hill retained a beneficial interest in the Oxford property. Consequently, for purposes of summary judgment the Court must accept Colecchi’s representation.[9]
Statute of Limitations
The defendant next contends that the instant action is barred by the six-year statute of limitations applicable to contract cases, G.L.c. 260, §2, and the three-year statute of limitations governing actions in tort, G.L.c. 260, §2A. Under either statute, the statutory time period commences “after the cause of action accrues.” The defendant appropriately cites to Henrickson v. Sears, 365 Mass. 83 (1974), as establishing the discovery rule doctrine in Massachusetts. Like the claims presented here, Hendrickson involved a suit against an attorney for negligent certification of title to real estate. Presented as a question of state law interpretation from the U.S. Court of Appeals for the First Circuit, the SJC announced the rule as follows: “A client’s cause of action against an attorney for negligent certification of title to real estate does not ‘accrue’ for the purposes of G.L.c. 260, §§2 and 2A, until the misrepresentation is discovered or should reasonably have been discovered, whichever occurs first.” Id. at 91, The discovery rule has subsequently expanded to include other types of tort and contract claims. Friedman v. Jablonski, 371 Mass. 482, 485 (1976) (fraudulent misrepresentation); Franklin v. Barone, 381 Mass. 611, 618-19 (1980) (medical malpractice claims); Frank Cooke, Inc. v. Hurwitz, 10 Mass.App.Ct. 99 (1980) (tort and breach of contract); Anthony’s Pier Four, Inc. v. Crandall Dry Dock Engineers, Inc., 396 Mass. 818 (1986) (breach of warranty).
Under the discovery rule, the statutory period begins running when the prospective plaintiff has “(1) knowledge or sufficient notice that she was harmed and (2) knowledge or sufficient notice of what the cause of harm was.” Bowen v. Ely Lilly & Co., 408 Mass. 204, 208 (1990). When raised as a defense the plaintiff bears the burden of proving that he did not or should not reasonably have known of the harm. Williams v. Ely, 423 Mass. 467, 475 (1996). Ordinarily, the question of when a plaintiff knew or should have known of the existence of a cause of action is a question of fact, Riley v. Presnell, 409 Mass. 239, 247-48 (1991), to be decided by the objective standard of a “reasonable person in the plaintiffs position.” Id. at 245.
Applying these principles to the instant case the Court is satisfied that there is a genuine issue of material fact regarding when the plaintiff (or Fort Hill) knew or should have known that the title certification was flawed. The defendant contends, without any record support, that Fort Hill was on notice of problems with the title when, in May 1997, the property was sold to Saad for $20,200. The defendant argues, “It is fair to assume that Mr. Saad did not pay $20,200.00 for the property without a title search.” Statement of Reasons in Support of Defendant's Motion for Summary Judgment, page 8. The assumption is similarly applied to Mr. Lanctot who took title one month after Saad. Acknowledging that a title search is customarily performed upon an arms-length sale of real estate, and generally is required by any lending institution before mortgage monies are lent, the facts as contained in Colecchi’s affidavit (as well as the dramatically lower purchase price paid by Saad) suggest that the 1997 transfers were not arms-length transactions. According to Colecchi the only purpose for the paper transfer of title to Saad was to obtain money, in the form of a loan, to pay off tax liens and protect Fort Hill’s investment. Similarly, the Saad-Lanctot conveyance was arranged to pay Saad, remove him from the picture, and join the Oxford property as part of a series of business deals between Colecchi and Fort Hill, and Lanctot. Colecchi’s assertions are supported, in part, by the written settlement agreement between her and Lanctot. The defendant offers no evidence to rebut Colecchi’s claim that the 1997 transactions did not bring to light concerns about the title to the Oxford property.
It is clear that the outer limit for purposes of applying the discovery rule is September 20,2002, the date when Nelson & O’Connell issued their title report highlighting the defects in the chain of title. The Nelson & O’Connell title examination was ordered following an offer to purchase a portion of the Oxford property. [10] The offer, from the Wright family, appears to be an arms-length transaction unlike the 1997 transfers. Colecchi filed her lawsuit on October 2, 2003. On this evidence there is a genuine issue of material fact as to when Fort Hill or Colecchi knew or should have known of the defects in the Gould title certification.[11]
Lack of Evidence to Support Negligence or Breach of Contract
The defendant’s final argument, advanced during the hearing on October 4th, is that summary judgment should be granted because, even if the plaintiff is permitted to pursue her claims, there is no evidence that Gould was negligent or breached its contract when it certified title in 1987. The title certificate, signed by Attorney Boynton, recited that a title search for a period of 50 years showed that Fort Hill received good title. Relying on standards established by the Massachusetts Conveyancers Association the defendant asserts that a 50-year search is the industry standard for a title search, and therefore, the title search was not negligently performed.
The Massachusetts Conveyancers Act, Title Standard No. 1, provides,
It is sufficient if the title examination covers a period of fifty years and the starting point is a warranty, quitclaim or duly authorized or empowered *384 fiduciary’s deed which on its face does not suggest any defects.
Massachusetts Practice Series, Vol. 28A Ch. 1, §2. According to the Nelson & O’Connell report, the Fort Hill purchase was the 12th time title to the Oxford parcel had been conveyed by deed since its first conveyance in 1891. The first five deeds contained express language identifying the parcel as north of Fort Hill Road. The deeds reflecting the sixth through the twelfth transfer (to Moscoffian) omitted the referenced identifying language and instead, specifically excepted “all property located north of Fort Hill Road . . -[12] Clearly, had the change in description occurred within the 50 years prior to Gould’s title examination, the MCA Standard would provide no comfort to the defendant. Neither party has presented the Court with any evidence as to when the prior deeds were recorded. This omission is not determinative, however, because the Standard itself contains a significant caveat. Reliance on a 50-year term suffices under Standard No. 1 if the deed, ”on its face does not suggest any defect." The Moscoffian-Fort Hill deed is inconsistent on its face, beginning with the reference that the parcel contained 100 acres and concluding with an intended conveyance of 24.72 of the total 100 acres. Jeremy F. O’Connell of the Nelson & O’Connell Title Company, described it as a “wretched title” containing a “dreadful description.”[13] This is sufficient in the Court’s view, to raise an issue of fact as to whether Gould was reasonable in relying on an industry standard to determine the extent of their title examination.
ORDER
The defendant’s Motion for Summary Judgment is hereby DENIED.

As part of the plaintiffs Opposition to the motion she has attached a stock certificate for Fort Hill Development Associates, numbered as Certificate No. One, showing 100 shares of stock issued to Colecchi. The records do not make clear that this was the only stock issued by the corporation or whether there were other stockholders at the time of the corporation’s dissolution.

Exhibit A to Motion for Summary Judgment. The facts are taken from the parties’ submissions in support of or opposition to the motions for summary judgment.

The title search was apparently conducted in connection with a mortgage Fort Hill gave to the Webster Five Cents Savings Bank in the amount of $96,000.

The title search traced a series of transfers beginning with the single ownership of an 150-acre farm in 1882, that was conveyed in three segments: in 1882, relating to a 30-acre parcel in the southwest corner of the farm; in 1891, relating to a parcel located north of Fort Hill Road; and in 1893, relating to the remainder situated south and southeast of Fort Hill Road. The instant deed traces back to the 1891 transfer of somewhere between 24-30 acres north of Fort Hill Road, but then specifically excludes the property to the north of the road. Nelson & O’Connell opined that the likely intended purpose of the deed was to transfer the parcel of land that had been in the southwest corner of the original farm, the problem being that the Moscoffians never had title to that parcel.

The transfer of assets to shareholders occurs by operation of law after a three-year waiting period established by G.L.c. 156B, §102. Any transfer during the three-year statutory waiting period can occur only upon petition to the Supreme Judicial Court or the Superior Court. See, G.L.c. 156B, §103. The Court assumes, for purposes of the instant motion, that Colecchi received the right to sue (to the extent that it was a corporate asset) by operation of law rather than through a judicial decree.

As noted supra at n. 2, Colecchi held 100 shares of Fort Hill stock and the defendants do not claim that there were any other shareholders. Moreover, any defect in Colecchi’s ability to assert a claim on behalf of the corporation could be remedied by the filing of a petition to revive the corporation pursuant to G.L.c. 156B, §104.

Exhibit C to Plaintiffs Opposition to Motion for Summary Judgment.

The defendants may challenge the 1997 conveyances at trial and request by special question that the jury determine whether Fort Hill retained an interest in the property. In this fashion standing would become a disputed issue of fact appropriate for a jury’s consideration.

Plaintiff s counsel states that the offer from the Wrights was received in 2001, leading to the title search in 2002. Opposition, page 2. There is no other reference to the date of the Wright offer in the materials submitted in connection with the motion for summary judgment.

In ruling that summary judgment is not appropriate based on the statute of limitations, the Court is not determining that the plaintiff has met her burden of showing that she did not or should not have known about the questionable title. Rather, the Court is only ruling that there is a genuine issue of fact regarding this issue, sufficient to overcome summary judgment. The evidence to be offered at trial will likely include testimony that Fort Hill (and Colecchi) were intimately familiar with the site of the old farmstead in Oxford, having developed a 56-acre subdivision on one of the other parcels that they purchased from the Moscoffians.

Fort Hill Deed, Exhibit “A” to Defendant’s Motion.

Nelson & O’Connell title report, Exhibit “H” to Defendant’s Motion.