Herbert A. MIDDENDORF et al.,
Plaintiffs-Appellees,

v.

FUQUA INDUSTRIES, INC.,
Defendant-Appellant.

Nos. 78–3147, 78–3148.

United States Court of Appeals,
Sixth Circuit.

Argued April 3, 1980.

Decided June 16, 1980.

14

Louis J. Schneider, Jr., Cincinnati, Ohio, for defendant-appellant.

James W. Farrell, Jr., Gerald V. Weigle, Jr., Dinsmore, Shohl, Coates & Deupree, Cincinnati, Ohio, for plaintiffs-appellees.

Before LIVELY and BROWN, Circuit Judges, and PECK, Senior Circuit Judge.

LIVELY, Circuit Judge.

This is a diversity action in which the district court entered judgment declaring the defendant liable for rents and for damage to the reversionary interest of the plaintiffs under a long-term lease of real estate. Following lengthy proceedings the court entered its findings of fact and conclusions of law which included a finding that the reversionary interest of the plaintiffs in the real estate had been damaged to the extent of $350,000 by the defendant's breach of an obligation of the lease to keep the premises in good repair at all times. The parties then stipulated that rents due the plaintiffs to the date of judgment (adjusted to reflect other lease provisions) totalled $443,170.80. Judgment was entered for the plaintiffs in the amount of $793,-170.80. The defendant presents two issues

on appeal: (1) The defendant contends that it was not the lessee of the plaintiffs at the time of default and is liable neither for rents nor damages. (2) The defendant contends that if it is liable under the lease, the district court applied the wrong measure of damages for breach of the covenant to keep in good repair. We affirm the judgment of the district court.

## I.

The parties filed a stipulation and agreed statement of facts pursuant to Federal Rules of Appellate Procedure 10(d). Among other facts stipulated were the following:

The plaintiffs purchased a tract of commercial real estate in Hamilton, Ohio which is zoned for heavy industrial use and is improved with several buildings constructed between 1919 and 1965. At the time of the purchase by the plaintiffs on October 11, 1967, the real estate was subject to a lease dated July 15, 1967 between Ashley F. Ward as lessor and Ward Manufacturing, Inc., an Ohio corporation (Ward (Ohio)), as lessee. The lease was for a term of 20 years expiring September 1, 1987. At the time of the lease and at the time of the purchase of the property by the plaintiffs Ward (Ohio) was manufacturing camping trailers on the property which were sold under the name "Nimrod."

On December 10, 1968 a wholly-owned subsidiary of the defendant Fuqua, Interstate Motor Freight System, Inc., a Delaware corporation formed by Fuqua to take over the "Nimrod" trailer business, acquired Ward (Ohio) through a statutory merger in which Interstate Motor Freight System, Inc. was the surviving corporation. Immediately following this merger Interstate Motor Freight System, Inc. changed its name to Ward Manufacturing, Inc., a Delaware corporation, hereafter referred to as Ward (Delaware). From the time of the merger until October 6, 1970 Ward (Delaware), a wholly-owned subsidiary of the defendant Fuqua, continued to manufacture camping trailers on the leased property under the "Nimrod" name. On October 6, 1970 Ward (Delaware) was dissolved and all of its assets and liabilities passed to the defendant Fuqua, its sole shareholder. All of the assets of Ward (Delaware) were sold to Ward Interfinancial Corporation, a Delaware corporation, whose name was subsequently changed to Eldorado Industries, Inc. In connection with this sale Ward (Delaware) and Fuqua assigned all of their interests under the July 15, 1967 lease to Eldorado Industries, Inc. by an instrument styled "Assignment of Lease and Agreement." The Assignment was signed on behalf of Ward (Delaware) on October 6, 1970 and on behalf of Fuqua on October 7, 1970. Included in the Assignment was the following language:

(1) This assignment and agreement has been made on the basis of the following facts:

\*　　\*　　\*　　\*　　\*　　\*

(e) On or about October 6, 1970 Ward [Manufacturing, Inc.—*i. e.*, Ward (Delaware)] was dissolved and Fuqua became entitled to all the assets of Ward.

Between 1970 and 1974 part of the premises was occupied by a sub-tenant of Eldorado Industries, Inc. which paid a proportionate share of the rental due under the lease up to January 1, 1974. Although plaintiffs demanded that Fuqua acknowledge and discharge the obligations of lessee under the lease on several occasions from 1971 to 1973, Fuqua never did acknowledge such obligations, but consistently referred the demands of the plaintiffs to Eldorado. By October 1971 plaintiffs knew that Ward (Delaware) had been dissolved and its assets and liabilities passed to Fuqua which had immediately transferred them to Eldorado. Plaintiffs also knew by October 1972 that the rent was being paid by Eldorado or its successors rather than by Ward (Delaware) after October 6, 1970. The defendant Fuqua never occupied the premises and never paid any of the rental due under the lease to the plaintiffs.

## II.

### A.

Fuqua contends that it is only secondarily liable under the lease as sole shareholder of the dissolved corporation Ward (Delaware) and is not subject to an action by the plaintiffs because the plaintiffs failed to secure a judgment against Ward (Delaware). A Delaware statute [1] provides that no action may be brought against an officer, director or stockholder for the debt of any corporation until judgment has been obtained against the corporation and execution returned unsatisfied. Fuqua argues that the present action against it as sole shareholder of Ward (Delaware) is for a debt of that corporation and that the action is barred because of the plaintiffs' failure first to obtain a judgment against Ward (Delaware). An action against a corporation in dissolution must be commenced within the three-year statutory period allowed by Delaware law.[2] It is conceded that the plaintiffs did not begin an action or obtain a judgment against Ward (Delaware) within three years after its dissolution.

The district court disposed of this argument by analyzing both transactions involving the two Ward corporations. The court found that the effect under Ohio law of the merger of Ward (Ohio) into Ward (Delaware) was to transfer the leasehold by operation of law and not by assignment. All of the obligations of Ward (Ohio) under the lease became the obligations and liabilities of Ward (Delaware). Thus Ward (Delaware) stepped into the shoes of Ward (Ohio) as lessee and was not a mere assignee under the lease.

The court also found that when Ward (Delaware) was dissolved, Fuqua as its sole stockholder succeeded by operation of law to all of the assets of Ward (Delaware), including its interests under the lease of July 15, 1967. Having stepped into the shoes of the original lessee, Fuqua remained liable as principal obligee. Its subsequent assignment to Ward Interfinancial did not make Fuqua secondarily liable. In the present action plaintiffs did not sue Fuqua on a debt of the dissolved corporation, Ward (Delaware), but as a principal under the lease. Thus, the district court held that the Delaware limitations statute which refers to shareholder liability for debts of a corporation is not applicable to this case.

Finding no Ohio law on the effect of a corporate dissolution on lease obligations, the district court looked to decisions of other jurisdictions. The district court found case law support for the following statement in an annotation entitled "Dissolution of Corporate Lessee as Affecting Lease and Rights and Liabilities Incident Thereto."

> Assuming that the liquidating trustees of a dissolved corporate lessee find the lease a valuable asset of the corporation, which they desire to preserve for the benefit of the stockholders, rather than abandon it with the consequence of rendering the estate in liquidation accountable to the lessor in damages (as brought out supra, V), the stockholders or other persons who are in equity entitled to the property of the corporation step into the shoes of the corporate lessee with the same rights and liabilities in respect to the lease as attached to the corporate lessee.

---

1. Section 325(b), Title 8, Delaware Code Annotated.

2. Section 278, Title 8, Delaware Code Annotated, provides as follows:

   All corporations, whether they expire by their own limitation or are otherwise dissolved, shall nevertheless be continued, for the term of three years from such expiration or dissolution . . ., bodies corporate for the purpose of prosecuting and defending suits, whether civil, criminal or administrative, by or against them, . . . but not for the purpose of continuing the business for which the corporation was organized. With respect to any action, suit, or proceeding begun by or against the corporation either prior to or within three years after the date of its expiration or dissolution, the corporation shall, for the purpose of such actions, suits or proceedings, be continued bodies corporate beyond the three year period and until any judgments, orders, or decrees therein shall be fully executed, without the necessity for any special direction to that effect by the Court of Chancery.

147 A.L.R. 360, 369 (1943). *See e. g., Abbott v. Fluid Power Pump Co.,* 112 Ill.App.2d 303, 251 N.E.2d 93 (Ill.App. 1969). The district court concluded that Fuqua, after dissolution of Ward (Delaware), treated the lease as a valuable asset by including it in the assets transferred to Ward Interfinancial Corporation. Since it recognized the lease as a valuable asset of the dissolved corporation, Fuqua, as sole shareholder, stepped into the shoes of Ward (Delaware).

■ Fuqua seeks to distinguish the cases relied upon by the district court by pointing out that in those cases the party who sought to resist liability had actually taken possession of the leased premises. However, the rule upon which the court relied does not require actual possession by the one charged with liability. The test is whether the leasehold interest of a corporation in dissolution is treated as a valuable asset or abandoned. Only if it is abandoned or disclaimed does it remain a primary obligation of the corporation. If this interest passes to the shareholders and is treated as a valuable asset, they become the principal obligees under the lease. That Fuqua did so consider the lease is shown by its inclusion in the property sold and transferred to Ward Interfinancial. Further, at least from dissolution of Ward (Delaware) on October 6, 1970 until assignment of the lease to Ward Interfinancial on October 7, 1970, Fuqua, as the sole owner of all assets of the dissolved lessee, was entitled to possession of the leased premises.

■ Though Ohio has never adopted the rule relied upon by the district court, we conclude that its application led to the correct result in this case. One overriding fact to be kept in mind is that Fuqua controlled each corporate entity involved with the leased premises after the merger of Ward (Ohio) into Ward (Delaware) and before the eventual assignment to Eldorado. Though the corporate form and the corporate name of the lessee underwent a number of transformations, the architect of all the changes was Fuqua. Under these circumstances it would be unconscionable to permit Fuqua to escape responsibility under the lease by a series of transactions in which it sought to change its role from principal lessee to a mere assignee. The Supreme Court of Appeals of Virginia dealt with a somewhat similar situation in *Pepper v. Dixie Splint Coal Co.,* 165 Va. 179, 181 S.E. 406 (1935), where a corporate lessee was dissolved and its business taken over by a partnership composed of the same parties who owned all of the stock of the dissolved corporation. Assets of this partnership were subsequently transferred to a new corporation formed by the same individuals. The Virginia court ruled that the successor corporation was liable under the lease, stating:

> The actual and ultimate control and ownership of the property and business of the three companies was lodged in Litton and Long. Such complete dominance and control by them made the two corporations and the copartnership, quoad the appellant, merely a veil or shadow through which the court will look to the substance of things whenever it would be unconscionable, through corporate fiction or otherwise, to permit the real and responsible parties to escape liability by turning over their property from one entity to another. The form changed, but the real parties in interest always remained the same. 181 S.E. at 410.

### B.

■ Fuqua also maintains that it has no liability to the plaintiffs under the lease because, following the abandonment of the premises by Eldorado, plaintiffs accepted the abandonment and effected a surrender of the leasehold estate of the tenant. This contention is based upon the assumption that Eldorado, the subsequent assignee of the lease, was in fact the lessee. The district court found as a fact that the plaintiffs consistently advised Fuqua that it had no intention of surrendering the lease for Eldorado's default. Their partially successful efforts to find tenants for a portion of the leased property was nothing more than an effort to mitigate damages. Each lease which the plaintiffs entered into following

default stated that Fuqua was the responsible lessor. Fuqua was never excluded from the property by these efforts in mitigation. The fact that these leases did not refer to Eldorado is of no importance. Eldorado, an assignee, had abandoned the lease and had no right to possession. The July 1967 lease provided that if it were necessary because of the breach of the lessee the lessor had the option to re-enter and re-let the premises as an agent of the lessee. To the extent that the plaintiffs did re-let the premises, there was no ouster of Fuqua as lessee. Fuqua benefited because the rentals otherwise due under the lease were reduced by the amount of rent the plaintiffs were able to collect from other tenants.

## III.

### A.

◼ The lease contained two provisions involving the duty of the lessee to maintain the premises. The lessee agreed "that it will not do or suffer any waste therein, . . . and that at the end of said term he will deliver up said premises in as good order and condition as they now are, or may be put by said lessor, reasonable use and ordinary wear and tear thereof, and damage by fire and other unavoidable casualty, condemnation or appropriation excepted . . . ." The lease further provided that the lessee "will keep the interior, the structural [sic] and the exterior of the buildings of the premises in good repair at all times." In common with a number of other jurisdictions, Ohio recognizes that an agreement to keep premises in good repair during the term of the lease and an agreement to return the premises to the lessor in as good condition as when received are separate covenants. *See McKinney v. White Sewing Machine Corp.*, 200 N.E.2d 596, 600 (Ohio App.1964); *Avelez Hotel Corp. v. Milner Hotels, Inc.*, 227 Miss. 808, 87 So.2d 63, 65 (1956); *City Hotel Co. v. Aumont Hotel Co.*, 107 S.W.2d 1094, 1095 (Tex.Civ.App.1937). Clearly an action for damages for failure to return the premises in as good condition as when leased would be premature if filed before the lease expired. However, a cove-

nant to keep the premises in repair is breached at any time during the term that reasonably necessary repairs are not made by the lessee, and the lessor may bring an action for this breach forthwith rather than waiting until the end of the term. *McKinney v. White Sewing Machine Corp., supra* at 600, (*quoting Avelez Hotel Corp. v. Milner Hotels, Inc., supra*); 1 Tiffany, Landlord and Tenant, Section 116f, p. 767 (1912). Thus we conclude that the present action was not prematurely filed insofar as it sought damages for breach of the covenant to keep the premises in repair.

### B.

◼ The defendant contends that the district court erred in computing damages for breach of the duty to keep the leased premises in repair. Fuqua argues that the district court applied an incorrect measure of damages by basing its award on the cost at the time of the trial to effect necessary repairs. A number of states follow the rule that where a landlord sues before the end of the term of a lease for breach of a covenant to repair, the measure of damages is the injury to the reversion rather than the cost of repairs. *E. g., Tobin v. Union News Co.*, 18 A.D.2d 243, 239 N.Y.S.2d 22, 26 (N.Y.Sup.Ct.App.Div.1963), *aff'd*, 13 N.Y.2d 1155, 247 N.Y.S.2d 385, 196 N.E.2d 735 (1964); *National Bank of Detroit v. Voight's Estate*, 357 Mich. 647, 99 N.W.2d 504, 507 (1969); *Corbett v. Derman Shoe Co.*, 338 Mass. 405, 155 N.E.2d 423, 429 (1969); *Pennsylvania Cement Co. v. Bradley Contracting Co.*, 11 F.2d 687, 688 (2d Cir. 1926) (applying New York law). *See also* Annot. 80 A.L.R.2d 983, 987, 989 (1961).

In actions by lessors for damage to leased premises in excess of ordinary wear and tear at the time of the surrender of the property, the Ohio rule was stated in *Sopronyi v. Asztalos*, 101 N.E.2d 161, 162 (Ohio App.1949), as follows:

The measure of damages is the difference between the market value the property would have had at the time of the surrender of possession by the defendant, if it had remained in the condition in which it

was at the time possession was taken by the lessee, and its market value in the condition in which it was placed by the action of the defendant during the tenancy. *Blosser v. Enderlin*, 113 Ohio St. 121, 148 N.E. 393. The plaintiff is entitled to recover such amount as will fairly and reasonably compensate him for the damage done as provided by the terms of the lease. The cost of repairs may be admitted in evidence but only for the purpose of assisting in arriving at the fair and market value of the real estate at the times under consideration.

In the present case the district court supported its finding of $350,000 as the damage to the reversion by a detailed analysis of the costs of necessary repairs at the time of trial. However, as shown by the transcript the trial judge clearly understood and stated the proper measure of damages. There was evidence of the fair market value of the leased premises at the beginning of the lease and its value in the condition in which it was placed by the lessee during the term. We conclude that the district court applied the correct measure of damages and merely used the costs of repairs in arriving at the values at the required times.

### C.

■ While admitting that the finding of $350,000 as the cost of repairs is supported by the evidence, Fuqua contends that the plaintiffs were not entitled to an unrestricted award of this amount at a time when the lease had 11½ years to run. Unless the award is required to be used to put the premises back in the condition of repair required by the lease, it is argued, the plaintiffs will be able to use the money from this judgment as they please and then sue at the end of the term and receive a duplicate award of damages. Such a result will not be possible here. If the plaintiffs had waited until the end of the term to sue, the most they would have been entitled to recover would have been the cost of restoring the premises to the condition they were in when let. Instead they sued before the end of the lease on the covenant to keep in repair. If the plaintiffs do not use the $350,000 award to restore the premises they will be estopped from seeking further damages at the end of the term unless they are able to prove damages resulting from other defaults of the defendant occurring after the date of judgment in this case. Further deterioration of items that needed repair at the time of the judgment will not be the fault of the defendants.

### IV.

■ The plaintiffs have filed a cross-appeal in which they seek an upward adjustment of the award for breach of the covenant to keep in repair. The plaintiffs contend they were entitled to the cost of replacement boilers to furnish heat to "Building A" and to damages for the virtual destruction of the cafeteria in the same building. As with its findings disputed by Fuqua, the district court's findings of fact concerning these two claims are not clearly erroneous. The court demonstrated an understanding of the basis of each claim, made appropriate findings and applied correct legal principles.

### CONCLUSION

All counsel in this case are commended for their willingness to stipulate where possible throughout the proceedings. In view of the detailed and extensive proof offered on the contested issues, this court particularly appreciates the stipulation and agreed statement of facts filed pursuant to Rule 10(d), Fed.R.App.P.

The judgment of the district court is affirmed on appeal and cross-appeal. No costs are allowed. Each party will pay its own costs on appeal.