250 N.J. Super. 11 (1991)
593 A.2d 347
SADIE E. KELLY, PLAINTIFF-RESPONDENT AND CROSS APPELLANT,
v.
ALSTORES REALTY CORPORATION, A DELAWARE CORPORATION; ALLIED STORES CORPORATION, A DELAWARE CORPORATION; THE EDWARD J. DEBARTOLO CORPORATION, AN OHIO CORPORATION; BERGEN MALL PARTNERSHIP, DEFENDANTS-APPELLANTS AND CROSS RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued March 5, 1991.
Decided July 3, 1991.
*12 Before Judges MICHELS, GRUCCIO and D'ANNUNZIO.
E. Neal Zimmerman argued the cause for appellants Bergen Mall Partnership and Edward J. DeBartolo Corporation (Waters, McPherson, McNeill, attorneys).
James S. Rothschild, Jr. argued the cause for respondent Sadie E. Kelly (Riker, Danzig, Scherer, Hyland & Perretti, attorneys).
William T. Reilly argued the cause for appellant Alstores Realty Corporation and Allied Stores Corporation (McCarter & English, attorneys).
PER CURIAM.
The issue is whether the voluntary dissolution of a corporate lessee, after the valid assignment of its rights under the lease, constitutes a breach of the lease entitling the lessor to a judgment of possession.
On July 28, 1954, plaintiff, as lessor, leased a one-acre lot to defendant, Alstores Realty Corp. (Alstores) for a 99 year term. The lease was for an annual rent of $10,500 for the first four *13 years and $12,600 per year for the next 95 years. The lease does not contain a rent escalator clause. The lot is located in Paramus, N.J. and has frontage on State Highway Route 4. It is now part of a valuable retail center known as the Bergen Mall.
Section 11.01 of the lease provides:

Section 11.01. Tenant shall have the right at any time and from time to time, without the consent of Landlord to assign this Lease or to sublet the Demised Premises or a part thereof. Notwithstanding any such assignment or subletting, or any further assignment or subletting, and notwithstanding the acceptance of rent by Landlord from any assignee or subtenant, Tenant shall remain liable for the payment of the rent reserved herein and for the performance of all of the covenants and conditions on the part of Tenant to be kept observed and performed.
Alstores was a subsidiary of defendant Allied Stores Corporation (Allied). On or about December 31, 1986, all of the outstanding stock of Allied was acquired by an indirect subsidiary of Campeau Corporation (Campeau) known as Campeau Acquisition Corp. (CAC). Since Alstores was a subsidiary of Allied, ownership of Alstores stock also passed to Campeau. After a series of transactions involving numerous corporations, Allied was restructured. According to Joseph Calandro, Jr., Senior Vice President of Allied:
Alstores was dissolved and its assets and corresponding liabilities were distributed to those CAC subsidiaries holding Alstores stock at the time of its dissolution in a manner consistent with new management's plan of operation for the restructured Allied.
........
Among the ... CAC subsidiaries which received Alstores' assets upon dissolution were two Delaware corporations, known as CAC IL, Inc. (subsequently known as Bergen Mall I, Inc.) and CAC L, Inc. (subsequently known as Bergen Mall II, Inc.). Each of these corporations received an undivided [50%] interest in the assets and assumed the corresponding liabilities (including the obligations under the plaintiff's lease) in the Bergen Mall.
In order to facilitate the ultimate sale of Bergen Mall, which was contemplated at the time of the restructuring, the assets and liabilities of Bergen Mall I, Inc. and Bergen Mall II, Inc. were contributed to a partnership known as Bergen Mall Partnership on December 31, 1986.
On December 30, 1986, Alstores executed a series of documents which resulted in it being divested of all of its assets, *14 including the Bergen Mall. These documents, a "Deed and Assignment of Leasehold Interests," and "Assignment and Assumption of Lease," provided that Alstores real estate interests in Bergen Mall, including its lease with Sadie Kelly, were conveyed directly to Bergen Mall Partnership (BMP). On December 31, 1986, Alstores filed its certificate of dissolution.
Plaintiff commenced this action for a judgment of possession in August 1987. Thereafter, she filed several amended complaints, one of which sought reformation of the lease to yield a rent reflecting the property's increased value. Although the complaints alleged several acts of default and several legal theories to support plaintiff's request for relief, this appeal is limited to plaintiff's allegation that Alstores' dissolution breached § 11.01. According to plaintiff:
This provision of the lease was of crucial importance for me when I signed the lease and agreed to its terms, including the provision which allows Alstores to assign the lease without my consent. I relied on the fact that Alstores would continue to remain liable to me even it assigned the lease to a complete stranger and if subsequent assignments occurred thereafter.
The trial court agreed that Alstores' dissolution breached the lease, and granted summary judgment to plaintiff on that issue. However, the court did not enter a judgment for possession; it ordered reformation of the lease to allow for an increased rent reflecting contemporary values. The new rent would be determined at a trial.
The parties attempted to establish an appropriate rent through negotiation, reserving, however, their right to appeal the court's prior orders. Thereafter, the court, despite BMP's objection, ordered enforcement of an alleged stipulation establishing an annual rent of $105,650 (plus cost of living increases). The court's order acknowledged that each party had the right to appeal from the final judgment.
Alstores and BMP appeal from the final judgment, and plaintiff cross-appeals contending that she was entitled to possession of the demised premises and termination of the lease. We now reverse the judgment in favor of plaintiff.
*15 The rule of general application in the United States is that a lease to a corporation is not terminated by the dissolution of the corporation. 49 Am.Jur.2d Landlord and Tenant § 997 (1970).
Thus, in the absence of an express provision in the lease therefor, the dissolution of a lessee corporation does not give the lessor the right to terminate the lease, assuming, of course, that the liquidating trustees or the successor to the corporation's property desire to keep the lease in effect, and are willing to perform the covenants thereof. It would seem that the lessor would have a claim against the assets of the dissolved corporation for rentals to accrue after the dissolution. So, with a few possible exceptions, the cases seem agreed that the lessor is entitled to assert, against the corporate lessee's estate in liquidation, a claim in respect to the unexpired portion of the lease, even though the liquidating trustees have declined to assume the lease as an asset of the estate.
Id. at 968. Accord 16A W.M. Fletcher, Cyclopedia Corporations § 8124 (1988).
A lease to a corporation may, by its terms, terminate where the corporation ceases to exist. But unless the lease so provides, the rights and obligations thereunder are not extinguished by the corporations's dissolution, since leases affect property rights and survive the death of the parties. Moreover, a dissolution does not give a lessor the right to regard it as an anticipatory breach of contract. The stockholders succeed to the rights and liabilities of the dissolved corporation in an unexpired leasehold estate, including a corporate successor to the dissolved corporation which accepts the lease, and the obligation to pay rent, in accordance with the terms of the lease, may be enforced against its receiver.
Id. at 381. See generally Annotation, Dissolution of Corporate Lessee as Affecting Lease and Rights and Liabilities Incident Thereto, 147 A.L.R. 360 (1943).
In Town of Hampton v. Hampton Beach Improvement Co., 107 N.H. 89, 218 A.2d 442 (1966), the New Hampshire Supreme Court applied the general rule and held that involuntary dissolution by statute of a corporate lessee did not terminate a 99 year land lease:
We subscribe to the general rule that after the dissolution of a corporation its property passes to its stockholders subject to the payment of the corporate debts. Di Prete v. Vallone, 72 R.I. 137, 48 A.2d 250; Brooks v. Saloy, 334 Ill. App. 93, 79 N.E.2d 97; Cummington Realty Associates v. Whitten, 239 Mass. 313, 132 N.E. 53, 17 A.L.R. 527; 19 Am.Jur.2d, Corporations, s. 1659, p. 1007. There being no specific provision in this lease for its termination on the dissolution of the lessee Company, we hold that ... the stockholders succeeded to the lease and to the rights and liabilities of the Company in the leasehold estate. Cummington Realty Associates v. Whitten, supra; 16A Fletcher, *16 Corporations, s. 8124, p. 279; 19 Am.Jur.2d, Corporations, s. 1660, p. 1008. See Conn v. Manchester Amusement Company, 79 N.H. 450, 451, 111 A. 339; Annot. 147 A.L.R. 360, 362.
Id. 218 A.2d at 446-47.
Barrowman Coal Corp. v. Kentland Coal & Coke Co., 302 Ky. 803, 196 S.W.2d 428 (1946) involved a coal mining lease. The lessor contended that the lease had terminated when the lessee's corporate charter was forfeited. The court rejected that contention:
It is doubtful whether the reason given in the notice of declaration of the termination of the lease could be sustained. Departing from the rule of the common law, that upon expiration of a charter real estate of the corporation reverted to the grantor and the personal property to the Crown, it became the American rule that after the satisfaction of debts title to a defunct corporation's property passes to the stockholders as owners in common or sometimes as partners. So that a lease to a corporation is not ipso facto extinguished or terminated by its dissolution. 32 Am.Jur., Landlord and Tenant, Sec. 827; Fletcher Cyclopedia of Corporations, Par. 8124; Cummington Realty Associates v. Whitten, 239 Mass. 313, 132 N.E. 53, 17 A.L.R. 527. Nor does such a dissolution give the lessor a right to regard it as an anticipatory breach of the contract. Perry v. Shaw, 152 Fla. 765, 13 So.2d 811, 147 A.L.R. 352. We have recognized this rule as applicable to a mineral lease. Shadoin v. Sellars, 223 Ky. 751, 4 S.W.2d 717.
Id. at 806, 196 S.W.2d at 430. However, the court determined that the stockholders "abandoned the lease and all rights they may have had as successors to the corporation." Id. at 807, 196 S.W.2d at 431.
Segal v. Greater Valley Terminal Corp., 83 N.J. Super. 120, 199 A.2d 48 (App.Div. 1964) addressed an issue sufficiently analogous to be of assistance in the present case. It involved a 99 year lease that prohibited assignment, underletting or subletting without the lessor's written consent. Six years after execution of the lease, Paragon Oil Company, Inc., a New York corporation, owned all of the lessee's stock and lessee was merged into Paragon. We rejected the lessor's contention that the merger effected an unconsented to assignment of the lease.
In New Jersey the sale of shares of stock of a lessee corporation to another company, resulting in the relationship of parent and wholly-owned subsidiary, does not constitute an assignment of the lease or an underletting of the premises. Posner v. Air Brakes & Equipment Corp., 2 N.J. Super. 187 [62 A.2d 711] (Ch. Div. 1948); Rivoli Holding Co. v. Ulicny, 109 N.J. Eq. 54 [156 A. *17 369] (Ch. 1931). A subsequent merger of the parent and subsidiary into one corporation, achieved as it was in the present case by a filing of a certificate of ownership and the elimination of Greater Valley's stock and name, in no way changed the beneficial ownership, possession, or control of Greater Valley's property or leasehold estate. The effect of such a formal step on the lease agreement is no different from the effect produced by the original purchase of the subsidiary's stock  no assignment or similar transfer of the lease occurred.
Id. at 123-24, 199 A.2d 48. We also ruled that New Jersey law applied because the issue involved the title, transfer and disposition of lands in New Jersey. Id. at 124, 199 A.2d 48.
In Middendorf v. Fuqua Industries, Inc., 623 F.2d 13 (6th Cir 1980), the issue was whether defendant Fuqua Industries, Inc., as sole shareholder of a dissolved corporate lessee, was liable to the lessor for breaching a lease covenant. The Court of Appeals affirmed the trial court's judgment against defendant on the ground that defendant had recognized the lease as a valuable asset of the dissolved corporation and, therefore, was primarily liable because it had "stepped into the shoes" of the dissolved corporation:
The test is whether the leasehold interest of a corporation in dissolution is treated as a valuable asset or abandoned. Only if it is abandoned or disclaimed does it remain a primary obligation of the corporation. If this interest passes to the shareholders and is treated as a valuable asset, they become the principal obligees under the lease. That Fuqua did so consider the lease is shown by its inclusion in the property sold and transferred to Ward Interfinancial.
Id. at 17. Because Fuqua was primarily liable, the Delaware statute requiring a judgment against a dissolved corporation before an action is brought against its shareholders was ruled to be inapplicable. Similarly, the Delaware three-year limitation period for actions against dissolved corporations was also inapplicable.
The general rule, however, has not always been applied. In Rauch v. Circle Theatre, 176 Ind. App. 130, 374 N.E.2d 546 (1978), the lessors sued the lessee and their assignee seeking damages for an anticipatory breach of the lease. The corporate lessee voluntarily dissolved after it assigned the lease to an unrelated third party. The court observed that, absent a novation an assignment does not abrogate the lessee's obligation to pay rent and, therefore, the lessee-assignor remains bound until *18 the lease expires. The court characterized the lessee's post assignment obligation as a suretyship.
The court recognized the general rule that "absent an express provision in the lease to the contrary, the voluntary dissolution of a corporation does not of itself constitute a breach of the lease." Id. 374 N.E.2d at 551. However, the court did not apply the general rule because it found that the lessee intended the assignment and dissolution
to be a complete and final termination of its business enterprise rather than a mere change in its form or structure. The liquidation of the corporate assets and dissolution of those assets to the shareholders ... was an express repudiation of the lease. The corporation was voluntarily placing itself in a position in which it could not perform its obligation and was therefore in breach of the lease.
Id. 374 N.E.2d at 552. See South Main Akron v. Lynn Realty, Inc., 106 N.E.2d 325 (Ohio Ct. App., 1951) (corporate lessee's dissolution treated as anticipatory breach; but petition alleged assignee's intent to abandon).
Other cases which have ruled that a corporation's dissolution constituted an anticipatory breach of its contract, such as Kalkhoff v. Nelson, 60 Minn. 284, 62 N.W. 332 (1895) and People v. National Trust Co., 82 N.Y. 283 (1880), are not helpful. In both cases the receivers abandoned the leases contending that dissolution of the corporate lessee terminated the lease. Gamble v. Penn Valley Crude Oil Corp., 34 Del. Ch. 359, 104 A.2d 257 (1954) is inapposite. It held that dissolution was a breach of the dissolved corporation's obligation to honor stock options it had issued. Id. 104 A.2d at 260. Martin v. Star Publishing Co., 50 Del. 181, 126 A.2d 238 (1956) involving a breach by dissolution of a contract of employment is also distinguishable because it involved a personal service contract. Id. 126 A.2d at 240-41.
The general rule is not to be applied blindly, and in appropriate circumstances dissolution of a corporate lessee may constitute the anticipatory breach of a lease entitling the lessor to some relief. But we do not perceive the present matter to be such a case and we shall apply the general rule. As previously *19 indicated, Alstores' dissolution was part of a complex restructuring of the components of a retailing conglomerate. Cf. Segal, supra, 83 N.J. Super. at 124, 199 A.2d 48. Two of those components, Bergen Mall I, Inc. and Bergen Mall II, Inc., formed BMP which received Alstores' Bergen County, N.J. real estate interests, including the Kelly lease. Thus, the present case is not one of abandonment of the lease by the dissolving corporation. To the contrary, the lessee's benefits and obligations were retained by elements of the restructured conglomerate. Cf. Middendorf, supra, 623 F.2d at 18. Moreover, we perceive no prejudice to the plaintiff from Alstores' dissolution. Nothing in the lease expressly prohibited Alstores from dissolving or expressly required Alstores to maintain a certain level of net assets to enable it to fulfill the lease obligations in the event of an assignee's default. BMP currently is fulfilling the lessee's obligations under the lease, and plaintiff's expressed concerns are based on hypothetical and speculative contingencies.
Reversed.