613 A.2d 1163

SADIE E. KELLY, PLAINTIFF-APPELLANT, v. ALSTORES REALTY CORPORATION, A DELAWARE CORPORATION AND BERGEN MALL PARTNERSHIP, DEFENDANTS-RESPONDENTS, AND ALLIED STORES CORPORATION, A DELAWARE CORPORATION, THE EDWARD J. DEBARTOLO CORPORATION, AN OHIO CORPORATION, AND DOES 2 THROUGH 10, PERSONS AND CORPORATIONS UNKNOWN, DEFENDANTS.

Argued May 5, 1992—Decided October 22, 1992.

*Peter N. Perretti, Jr.,* argued the cause for appellant (*Riker, Danzig, Scherer, Hyland & Perretti,* attorneys; *James S. Rothschild, Jr.,* of counsel; *Mr. Rothschild* and *Kendall E. James,* on the briefs).

*E. Neal Zimmermann* argued the cause for respondent Bergen Mall Partnership (*Waters, McPherson, McNeill,* attorneys; *Mr. Zimmermann* and *Perry Florio,* on the briefs).

*William T. Reilly* argued the cause for respondent Alstores Realty Corporation (*McCarter & English,* attorneys).

The opinion of the Court was delivered by

BROCHIN, J.A.D. (temporarily assigned).

Plaintiff Sadie Kelly owns approximately one acre of real estate adjacent to New Jersey Route 4 in Paramus, New Jersey. In 1954, defendant Alstores Realty Corporation leased the property from her for ninety-nine years to form part of the area that it intended to develop for a shopping center.

Ms. Kelly's real estate is now part of Bergen Mall, a giant shopping center containing more than one million square feet of leasable space and more than 100 mall tenants, a substantial number of which are nationally known retailers. Her one-acre parcel is the site of Sterns Auto Center, seventy-two parking spaces, and a major entrance into the mall.

The lease from Ms. Kelly to Alstores provides for a net rent of $10,500 a year for the first four years of the lease and $12,600 a year for the balance of the term. The parties to this lawsuit have stipulated that the currently "appropriate" annual rent for the property free of the lease would be $105,650. (In 1954, prior to the commencement of Alstores' tenancy, the annual rent paid by the occupants of the premises totaled $6060.)

Ms. Kelly commenced the present suit to terminate the lease. She claims that she is entitled to terminate it because, in 1986, Alstores Realty Corporation was dissolved as part of a complex corporate reorganization of its parent corporation, Allied Stores Corporation. Prior to the reorganization, Alstores owned five regional shopping centers, including the Bergen Mall. A subsidiary of Campeau Corporation acquired a majority, and then all, of the outstanding shares of Allied. Campeau caused

Alstores to be dissolved and to distribute its assets and related liabilities to various subsidiaries of Campeau Corporation. Among the subsidiaries of Campeau Corporation to which the assets of Alstores were distributed were Bergen Mall I, Inc. and Bergen Mall II, Inc. Each of those corporations received a fifty percent interest in the assets of Bergen Mall and assumed fifty percent of the related liabilities. Those assets and liabilities included the ninety-nine-year lease from Ms. Kelly. Bergen Mall I, Inc. and Bergen Mall II, Inc. formed a partnership, the Bergen Mall Partnership, to which they contributed their assets and liabilities, including the Kelly lease. The stock of Bergen Mall I, Inc. was then sold to The Edward J. DeBartolo Corporation and the stock of Bergen Mall II, Inc. was transferred to Campeau Corporation (U.S.), Inc.

In support of Ms. Kelly's contention that the dissolution of Alstores Realty Corporation constituted a material breach of her lease which entitled her to terminate it, she relies principally on Sections 8.02(c) and 11.01 of the lease.

Section 8.02(c) reads as follows:

Any of the following events shall constitute an event of default:

. . . .

(c) If Tenant, finally and without further right of appeal or review, is adjudicated a bankrupt or insolvent, or has a receiver appointed for all or substantially all of its business or assets on the ground of its insolvency, or has a trustee appointed for it after a petition has been filed for Tenant's reorganization under the Bankruptcy Act of the United States, known as the Chandler Act, or any future law of the United States having the same general purpose, or if the Tenant shall make an assignment for the benefit of its creditors or if Tenant's interest hereunder shall be levied upon or attached.

Ms. Kelly's argument based on this section is that there was some brief period of time between Alstores' assignment of its assets, including the lease that is the subject of this lawsuit, and the dissolution of the corporation. During that period of time, she contends, the corporation was "insolvent" within the meaning of the lease and therefore committed a default.

Section 11.01 reads:

Tenant shall have the right at any time and from time to time, without the consent of Landlord, to assign this Lease or to sublet the Demised Premises or

any part thereof. Notwithstanding any such assignment or subletting, or any further assignment or subletting, and notwithstanding the acceptance of rent by Landlord from any assignee or subtenant, *Tenant shall remain liable* for the payment of the rent reserved herein and for the performance of all of the covenants and conditions on the part of Tenant to be kept, observed and performed. [Emphasis added.]

Ms. Kelly contends that this covenant on the part of the tenant to remain liable on the lease despite any assignment or subletting implies an undertaking that the tenant will remain in existence during the term of the lease. The tenant's dissolution, she asserts, was therefore a breach.

The trial court agreed with Ms. Kelly that, as a matter of law, the dissolution of Alstores Realty Corporation was a default under the lease. It held, however, that to avoid a forfeiture, the lease would be reformed to substitute the Bergen Mall Partnership as the tenant in place of Alstores and, in accordance with the maxim that he who seeks equity must do equity, the rent would also be reformed to a currently appropriate amount. The parties ultimately stipulated that that amount was $105,650 a year.

Defendants Alstores Realty Corporation and Bergen Mall Partnership appealed to the Appellate Division. They disputed the trial court's rulings that Alstores' dissolution constituted a breach of the lease and that the lease should be reformed to require payment of a currently reasonable rent. Ms. Kelly cross-appealed from the judgment of the trial court insofar as it denied her possession of the leased premises.

The Appellate Division reversed. *Kelly v. Alstores Realty Corp.*, 250 *N.J.Super.* 11, 593 *A.*2d 347 (App.Div.1991). The court recognized that "[t]he rule of general application in the United States is that a lease to a corporation is not terminated by the dissolution of the corporation." *Id.* at 15, 593 *A.*2d 347. It held that this rule is applicable unless a lease provides for termination in the event of the lessee's dissolution or unless the dissolution effects an abandonment of the lease. *Id.* at 19, 593 *A.*2d 347. The Appellate Division concluded that the present case did not fall within either of these exceptions. *Ibid.*

On Ms. Kelly's application, this Court granted certification to review the decision of the Appellate Division. She concedes the general rule as stated by that court, but she contends that Sections 8.02 and 11.01 of the lease provide for its termination in the circumstances of this case and therefore that one of the recognized exceptions to the rule applies. We disagree and therefore affirm.

We agree with the Appellate Division that the dissolution of a corporate lessee does not terminate a real estate lease unless the terms of the lease provide for its termination on the lessee's dissolution or unless the lessee has intentionally abandoned the lease. *Middendorf v. Fuqua Industries, Inc.,* 623 *F.*2d 13 (6th Cir.1980); *Haddad v. Francis,* 40 *Conn.Supp.* 567, 537 *A.*2d 174 (1986), *aff'd* 13 *Conn.App.* 324, 536 *A.*2d 597 (1988); *Falcone v. Hinsdale Gynecology & Obstetrics,* 148 *Ill.App.*3d 439, 102 *Ill.Dec.* 137, 499 *N.E.*2d 694 (1986), *app. denied,* 114 *Ill.*2d 544, 108 *Ill.Dec.* 416, 508 *N.E.*2d 727 (1987); *Rauch v. Circle Theatre,* 176 *Ind.App.* 130, 374 *N.E.*2d 546 (1978); *Barrowman Coal Corp. v. Kentland Coal & Coke Co.,* 302 *Ky.* 803, 196 *S.W.*2d 428 (1946); *Town of Hampton v. Hampton Beach Improvement Co.,* 107 *N.H.* 89, 218 *A.*2d 442 (1966); *see* 49 *Am.Jur.2d Landlord and Tenant* § 997 (1970).

Although no reported New Jersey case has applied this rule, our courts have recognized the analogous rule that upon the death of a natural person who is a tenant under a lease, his or her personal representatives ordinarily continue to be subject to the burdens and entitled to the benefits of their decedent's lease. *See Gross v. Peskin,* 101 *N.J.Super.* 468, 469, 244 *A.*2d 692 (App.Div.1968); *Egner v. Egner,* 183 *N.J.Super.* 326, 331, 443 *A.*2d 1104 (Ch.Div.1982) (dictum), *aff'd o.b.,* 185 *N.J.Super.* 1, 447 *A.*2d 182 (App.Div.1982); *State v. Pierce,* 175 *N.J.Super.* 149, 152, 417 *A.*2d 1085 (Law Div.1980) (dictum); *see also* Annotation, *Death of Lessee as Terminating Lease,* 42 *A.L.R.*4th 963 (1985). Any other rule, either for corporations or for real persons, would needlessly undermine the stability of

real estate leases and would generally be contrary to the
reasonable expectations of the parties.

■ No exception to the general rule is applicable to termi-
nate the lease in the present case. Section 8.02(c) of the lease,
the first of its provisions on which Ms. Kelly relies, is not even
arguably applicable. The clause, "If Tenant, finally and with-
out further right of appeal or review, is adjudicated a bankrupt
or insolvent ...," includes an elliptical phrase. The clearly
intended meaning of the clause is, "If Tenant ... is adjudicated
a bankrupt or [*adjudicated*] insolvent...." (Emphasis added.)
Alstores Realty Corporation was not adjudicated insolvent.

■ We also disagree with Ms. Kelly's contention that Sec-
tion 11.01 of the lease is an implied covenant against the
dissolution of Alstores Realty Corporation. The provision does
not support that contention. It says only that *"Tenant,"* a
defined term, "shall remain liable" (emphasis added) for the
payment of rent and for the performance of its other obli-
gations under the lease despite any assignment or subletting.
Section 17.07 defines "Tenant" as follows:

> As used in this Lease, the word ... Tenant means the owner at any time of the
> Tenant's interest under this Lease, unless the context otherwise connotes.

Section 17.08, which provides that the terms of the lease "shall
be binding upon and shall inure to the benefit of Landlord and
Tenant and their respective ... successors and assigns," im-
plies that "Tenant" may also include a "successor" and an
"assign." Read in the light of Sections 17.07 and 17.08, Section
11.01 is equivalent to a statement that "the owner at any time
of the Tenant's interest under this Lease," or the "successors
and assigns" of any owner, "shall remain liable for the payment
of the rent reserved herein and for the performance of all of
the covenants and conditions on the part of Tenant to be kept,
observed and performed." Bergen Mall Partnership, the pres-
ent "assign," is, of course, responsible for fulfilling the lessee's
obligations under the lease, and some or all of the former

shareholders of Alstores Realty Corporation may also be liable.[1] In view of the definition of "Tenant" contained in the lease, Section 11.01 does not require Alstores to stay in good standing so that it, too, will remain as a guarantor of the present tenant's obligations.

Ms. Kelly disagrees with this interpretation of the language of the lease. She contends that "Tenant" in the second sentence of Section 11.01 refers only to Alstores and not to any subsequent assignee because, in the language of Section 17.07, "the context otherwise connotes." She bases her argument on two grounds. First, she claims, the interpretation that we adopt would make the "Tenant's" undertaking "to remain liable" redundant because it would merely restate the legal rule that would be applicable even in the absence of a contrary contractual provision. Secondly, she asserts, she entered into the lease in reliance on the financial dependability of Alstores Corporation, and the quoted language should be interpreted to effectuate her reasonable expectations.

██ We agree that, as a matter of law, a lessee remains liable for the performance of its obligations under a lease despite having assigned its leasehold. *Gerber v. Pecht,* 15 *N.J.* 29, 31, 104 *A.*2d 41 (1954); *Stark v. National Research & Design Corp.,* 33 *N.J.Super.* 315, 323, 110 *A.*2d 143 (App.Div. 1954). However, that legal rule does not imply an undertaking

---

[1] The parties disagree about whether the shareholders of Alstores Corporation are "successors" to its liabilities under the Kelly lease and, if they are, whether their liabilities could be enforced without a suit having been brought against Alstores Corporation within three years after its dissolution. *See* 2 R. Franklin Balotti and Jesse A. Finkelstein, 2 *Del.Law of Corps. & Bus.Org.,* § 10.18–10.20 (2d ed. 1990); 4 *Id.* § 275–82 (tracing the history of the pertinent sections of the Delaware corporation laws, several of which have been amended since Alstores Corporation was dissolved in 1986). However, the disagreement is irrelevant to our disposition of the case. While the law of the state of incorporation may control with respect to liability of shareholders on dissolution, the law of New Jersey governs the interpretation of a lease of real property here. *See, generally,* 2 *Restatement of the Law Second, Conflict of Laws 2d* §§ 222, 307.

by a human lessee that he or she will not die or by a corporate lessee that it will not be dissolved. The explicit statement of the rule by a cautious draftsman does not add to the lessee's obligations.

The terms of the lease refute Ms. Kelly's contention that her reliance on the financial dependability of Alstores Corporation should lead us to interpret Section 11.01 to imply a covenant against dissolving Alstores. Ms. Kelly does not claim that Alstores made any representation concerning its net worth in the lease itself or in any accompanying document. It did not enter into any covenant to maintain any specified net worth. Whatever the net worth of Alstores Corporation may have been in 1986, when it is said to have owned five regional shopping centers, there is no evidence in the record to show that Ms. Kelly knew what its balance sheet was in 1956 when it was just beginning to develop Bergen Mall. In the absence of any guarantees of net worth, any limitations on Alstores' operation of its business, or any security for rent, Ms. Kelly could only have been relying on the shopping center itself, or on its prospects, to assure her receipt of rent for the next ninety-nine years. When the lease was written, a covenant to maintain Alstores as a corporation in good standing for the next ninety-nine years would have been useless and therefore not within the contemplation of the parties. We decline to infer such a covenant now. We need not consider or resolve here the issues that could arise where the manner and terms of a tenant's dissolution have materially diminished the landlord's security under a lease in which the financial strength and continued liability of a corporate tenant were bargained for and relied on by the landlord.

The judgment of the Appellate Division is affirmed.

*For affirmance*—Chief Justice WILENTZ, Justices CLIFFORD, HANDLER, O'HERN and STEIN, and Judges STERN and BROCHIN—7.

*For reversal*—None.