United States Court of Appeals,

Eleventh Circuit.

No. 96-9194.

HOOD BROTHERS PARTNERS, L.P., Plaintiff-Appellee,

v.

USCO DISTRIBUTION SERVICES, INC., Defendant-Appellant.

May 13, 1998.

Appeal from the United States District Court for the Northern District of Georgia. (No. 1:95-CV-784-WBH), Willis B.Hunt, Jr., Judge.

Before DUBINA, Circuit Judge, and HILL and GIBSON[*], Senior Circuit Judges.

JOHN R. GIBSON, Senior Circuit Judge:

USCO Distribution Services, Inc. appeals from the summary judgment entered against it in favor of its landlord, Hood Brothers Partners, Inc. Hood Brothers sued to terminate two long-term leases of property used for a warehouse. The leases were first signed in 1961 and 1972, respectively, and both leases have been amended to extend the term until 1998, with options until 2013. The annual rental was to remain the same throughout the life of the leases. Hood Brothers claims that USCO's predecessor in interest under the leases, Uniroyal, Inc., repudiated the leases by undergoing corporate dissolution without making adequate provision for its liability under the leases. The district court entered summary judgment for Hood Brothers, and USCO appeals. We reverse and remand for entry of judgment in favor of USCO.

The original tenant on the leases was Uniroyal. Uniroyal assigned its interest in the leases to one of its subsidiaries, an entity named USCO (now known as "old USCO"). Just before Uniroyal

[*]Honorable John R. Gibson, Senior U.S. Circuit Judge for the Eighth Circuit, sitting by designation.

dissolved in 1986, old USCO subleased the property to the USCO involved in this suit. Uniroyal dissolved old USCO and received back ownership of the prime leases, although, of course, the subleases to new USCO were still in effect. Later, after the present controversy began to take shape, Uniroyal decided an assignment was preferable to a sublease, and so executed an assignment of the leases to new USCO. Both the sublease and the assignment are permitted under the leases, which provide that the tenant can sublease or assign the leases without the landlord's permission, but that the original tenant will nevertheless remain liable on the leases.

After subleasing the property to new USCO, Uniroyal filed its articles of dissolution in December 1986. Uniroyal was a New Jersey corporation. Under New Jersey law,[1] upon dissolution a corporation does not cease to exist, but continues its corporate existence for the purpose of winding up its affairs. N.J. Stat. Ann. § 14A:12-9 (West 1996). Its property does not automatically revert to its shareholders, but must be transferred. *Id.* Uniroyal set up a trust, CDU Liquidating Trust,[2] and transferred some of its assets and liabilities to the trust, but it did not transfer its liability on the leases to the trust. According to Uniroyal's officer, David O'Boyle, Uniroyal's plan for taking care of its liability under the leases was simply to rely on USCO to fulfill its responsibilities as subtenant, and later, as assignee. There is no evidence that USCO has ever committed any breach

---

[1]The law of the state of incorporation ordinarily governs the legal effect of a corporation's dissolution, including the questions of the corporation's status, rights, and liabilities. *See Oklahoma Nat'l Gas Co. v. Oklahoma,* 273 U.S. 257, 259-60, 47 S.Ct. 391, 392, 71 L.Ed. 634 (1927) (Dissolution not procedural or controlled by law of forum; "[i]t concerns the fundamental law of the corporation enacted by the state which brought the corporation into being"); *Restatement (Second) of Conflicts of Law,* § 299, comment h and § 302 (1971). Hood Brothers does not cite any interest of the State of Georgia that would weigh against application of New Jersey law on this point. *See generally Restatement* § 302, comment e.

[2]At the same time Uniroyal dissolved, its parent corporation, CDU Holding, Inc., also dissolved. CDU Liquidating Trust was set up to liquidate assets and liabilities of CDU Holding.

of its duties as tenant. USCO has always paid the rent on time. In addition, USCO recently spent $700,000 to put a new roof on the warehouse.

Hood Brothers filed suit against USCO for a declaratory judgment that Uniroyal had repudiated the lease and that the leases had either been terminated or Hood Brothers was entitled to terminate them. Hood Brothers and USCO filed cross-motions for summary judgment. The district court held that Uniroyal had repudiated the leases because, upon dissolution, its shareholders did not take up the leases. Therefore, the district court held:

> Uniroyal has put itself knowingly in a position where it cannot perform its portion of the contract if called upon to do so; it has abandoned its obligations under the Leases. In so doing, Uniroyal has breached the Leases by intentionally putting itself in a position where it cannot perform its contractual obligations.

Alternatively, the district court held that if Uniroyal actually did transfer the leases to its shareholder, CDU Holding, and if CDU Holding transferred the leases to CDU Liquidating Trust, then the Trust repudiated the leases by a letter in which Uniroyal stated that the Trust and its beneficiaries "have no liability in their capacity as such beneficiaries under the lease at issue."

We review the grant of summary judgment *de novo,* applying the same standards as the district court. *See Jones v. Firestone Tire & Rubber Co.,* 977 F.2d 527, 535-36 (11th Cir.1992), *cert. denied,* 508 U.S. 961, 113 S.Ct. 2932, 124 L.Ed.2d 682 (1993). A motion for summary judgment should be granted only if, viewing the record in the light most favorable to the non-moving party, there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *See id.* at 535; Fed.R.Civ.P. 56(c). *See generally Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).

I.

USCO argues that Uniroyal did not repudiate the leases, and that the district court erred in so holding.

The district court acknowledged that dissolution of a corporation, by itself, does not constitute a breach of the leases. Slip op. at 10. It quoted *Kelly v. Alstores Realty Corp.,* 130 N.J. 313, 613 A.2d 1163 (1992), stating: "[T]he dissolution of a corporate lessee does not terminate a real estate lease unless the terms of the lease provide for its termination on the lessee's dissolution or unless the lessee has *intentionally abandoned* the lease." *Id.* at 1165 (emphasis added by district court). In this case, the leases do not provide that they terminate upon the tenant's dissolution. However, the district court concluded that Uniroyal had intentionally abandoned the leases. The district court reasoned that Uniroyal has made "no obvious provision ... for the liabilities in question," slip op. at 2659, because "Uniroyal has made no provision for the acceptance of this liability by its shareholders." *Id.* The district court implicitly held that assumption of the leases by the shareholders was the only way to provide for performance; and that since Uniroyal's shareholders had not taken up the leases, this must be deemed an intentional abandonment of the leases.

The district court's reasoning is based on two faulty premises: that Uniroyal made no provision for performance of its lease and that the only acceptable provision would be for Uniroyal's shareholders to assume the leases.

First, it is simply not true that Uniroyal made no provision for performance of the lease. In his deposition, Uniroyal officer O'Boyle testified:

> Q: Do you know how as part of the liquidation any remaining liabilities under the subject lease of this litigation was to be addressed or were to be addressed?
>
> ...

4

A: The buyer was supposed to pay them.

...

That didn't necessarily eliminate the other liability for the same liabilities but that was what was intended to happen and so far for I guess about ten years happened.

Considering the high value of these leases in light of the favorable rental terms they guarantee, selling the leases to someone who wanted to use the warehouse was an eminently practical way to provide for performance of the tenant's duties under the leases. Moreover, it is relevant that this method has in fact worked and that USCO has fulfilled the duties of the tenant under the leases.

If a landlord leases property to a corporation by a lease that permits assignment and imposes no net worth requirements on the original tenant, he cannot complain if the original tenant assigns the lease and dissolves itself—so long as the assignee performs all its duties. In *Kelly v. Alstores Realty Corp.,* 130 N.J. 313, 613 A.2d 1163 (1992), the tenant leased land used for a shopping center for a 99-year term. As inflation rendered the rental terms unfavorable to the landlord, the landlord attempted to avoid the lease on the ground that the corporate tenant had dissolved and assigned the lease to another corporation as part of a corporate reorganization. The New Jersey Supreme Court rejected the argument that the tenant's dissolution amounted to a repudiation of the lease. The court analogized the dissolution of a corporate tenant to the death of an individual tenant; in either case, the tenant's successors in interest ordinarily continue to be subject to the burdens and entitled to the benefits of the lease. 613 A.2d at 1165-66. The court reasoned that this general rule enhanced the stability of leases and was consistent with the reasonable expectations of the parties. *Id.*

Kelly then considered whether the terms of the particular lease contained an exception to the general rule. The landlord relied on the lease term providing that the tenant should remain liable on

5

the lease even if it assigned the lease or sublet the property. The landlord argued that this clause amounted to an implied covenant that the original tenant would not dissolve itself. The New Jersey Supreme Court rejected this argument, stating:

> The terms of the lease refute [the landlord's] contention that her reliance on the financial dependability of [the original tenant] should lead us to interpret [the lease] to imply a covenant against dissolving [the tenant]. [The landlord] does not claim that [the tenant] made any representation concerning its net worth in the lease itself or in any accompanying document. It did not enter into any covenant to maintain any specified net worth.... In the absence of any guarantees of net worth, any limitations on [the tenant's] operation of its business, or any security for rent, [the landlord] could only have been relying on the shopping center itself, or on its prospects, to assure her receipt of rent for the next ninety nine years.

*Id.* at 1167.

The leases in this case were similar in key respects to the *Kelly* lease. The leases provided that the tenant could assign or sublease without the landlord's permission; they defined "tenant" to include the original tenant's successors and assigns; and they placed on the tenant no net worth requirements or other hindrances to dissolution. Therefore, by *Kelly*'s rationale, Hood Brothers did not bargain for Uniroyal's continued existence in any particular corporate form. Hood Brothers is getting all that it bargained for, which is performance of the tenant's duties under the leases.

Hood Brothers contends that even if Uniroyal provided for performance of its duties by assigning to USCO, it has repudiated by failing to transfer the leases to its shareholders. This, Hood Brothers contends, has put Uniroyal in the position of being unable to perform its contingent liability of performing the tenant's duties if USCO ever fails to do so.

6

The argument is unpersuasive. Under New Jersey law a dissolved corporation may continue its corporate existence for the purpose of winding up its affairs.[3] The corporation's assets do not automatically pass to its shareholders, but must be affirmatively transferred.

In fact, while Uniroyal did transfer some assets to CDU Holding, Inc., Uniroyal's David O'Boyle testified that Uniroyal continues to have officers and directors, as well as corporate assets in the form of "several hundred million dollars of insurance." When asked whether the insurance would cover any liabilities under the leases in this case, O'Boyle said, "Could."

In arguing that only assumption of the lease by shareholders would keep the lease in force after Uniroyal's dissolution, Hood Brothers relies on *Rauch v. Circle Theatre,* 176 Ind.App. 130, 374 N.E.2d 546 (1978). In *Rauch,* a corporate tenant dissolved, distributed some of its money to

---

[3]The New Jersey corporate dissolution statute provides:

> (1) Except as a court may otherwise direct, a dissolved corporation shall continue its corporate existence but shall carry on no business except for the purpose of winding up its affairs....
>
> ...
>
> (2) Subject to the provisions of [section(1) ], and except as otherwise provided by court order, the corporation, its officers, directors and shareholders shall continue to function in the same manner as if dissolution had not occurred. In particular, and without limiting the generality of the foregoing ...
>
>> (b) title to the corporation's assets shall remain in the corporation until transferred by it in the corporate name ...
>>
>> (e) the corporation may sue and be sued in its corporate name and process may issue by and against the corporation in the same manner as if dissolution had not occurred....

N.J. Stat. Ann. § 14A:12-9.

7

shareholders, kept some money in escrow to pay debts, and assigned the lease to a going concern. The landlord sued the original tenant for future rent. The trial court held that the tenant had adequately discharged its obligation by assigning the lease, but the court of appeals reversed, finding an anticipatory repudiation.

Hood Brothers argues from *Rauch* that if the stockholders of a dissolving corporation do not take up the lease, they must be deemed to have abandoned the lease and committed an anticipatory repudiation, even if they actually provided for performance of the lease by assigning it to a third party who fulfills all the tenant's duties under the lease.

The case before us is distinguishable from *Rauch* in a crucial way. The inference in *Rauch* that shareholders of a dissolving corporation abandon any lease they do not affirmatively take up is based on the common law model of corporate dissolution, under which the dissolving corporation ceases its legal existence and its assets are automatically distributed to the shareholders. *See* 16A *Fletcher Cyclopedia of the Law of Private Corporations,* § 8142 (1995 rev. ed.) ("At common law, a dissolved corporation ceased to exist and could not sue or be sued in its corporate name.") New Jersey law, under which Uniroyal was incorporated, has changed from the common law model to a statutory scheme by which the dissolved corporation continues to exist for the purpose of winding up its affairs, and its assets do not automatically revert to its shareholders. It can sue and be sued. A New Jersey court summarized this distinction between the common law of dissolution and the New Jersey statute:

> The law in this state must not be confused with the rules applicable in some other states by reason of a fiction whereby it is deemed that after dissolution a corporation is to be considered legally "dead." ... Our statute, however, expressly continues the corporate entity for the purpose of prosecuting and defending suits.

8

*New Jersey Title Guarantee & Trust Co. v. Berliner,* 136 N.J. Eq. 162, 40 A.2d 790, 793 (N.J.Ch.1945). *Accord Penasquitos, Inc. v. Superior Court,* 53 Cal.3d 1180, 283 Cal.Rptr. 135, 812 P.2d 154, 156 (1991) (applying similar California statute). We have already recited evidence in this case that Uniroyal has in fact continued its corporate existence and continues to own assets in its own right. Because Uniroyal is legally able to own assets, pay debts, and be sued, it is altogether unwarranted to infer that unless the shareholders take up the lease, Uniroyal repudiated it.[4]

## II.

Hood Brothers also argues that the lease was expressly repudiated by CDU Holding, Inc. It quotes a letter from Mr. O'Boyle to Hood Brothers' lawyer, in which he enclosed a copy of the lease assignment from Uniroyal to USCO. The letter states:

> I would also advise you that the *enclosed assignment does not have the purpose of releasing Uniroyal, Inc. for any obligations it may have. ...*

> I am enclosing herewith a copy of the latest financial report for CDU Holding, Inc. Liquidating Trust (the "Trust") which, until the present, has been the entity forwarding the rent checks under its lease. I want to caution you, however, that in the future, your rent will come from the assignee, USCO Distribution Services, Inc. and *also advise you that the Trust has not assumed any obligations under the lease.*

(emphasis added). The very letter Hood Brothers uses to support its claim of repudiation implicitly states that Uniroyal does not consider the assignment to have extinguished its own liability under the leases. The statement that CDU Holding, Inc. Liquidating Trust has not assumed the lease does

---

[4]In addition to the question of whether Uniroyal exists as a legal entity that can be sued, at oral argument the factual question arose of whether Uniroyal actually has assets to pay the contingent liability. We must conclude from *Kelly* that the state of Uniroyal's pocketbook is none of Hood Brothers' business, since Hood Brothers did not obtain in the lease a covenant to maintain any particular net worth. *See Kelly,* 613 A.2d at 1167. *See also Berliner,* 40 A.2d at 793 ("The mere failure to provide for the future satisfaction of a contingent liability does not, ipso facto, create a cause of action in favor of the holder of such a contingent claim.")

not amount to a repudiation, since, as we have noted, Uniroyal was legally able both to pay debts and to be sued. The letter said that Uniroyal did not transfer the contingent liability to CDU Holding, Inc. Liquidating Trust, but continued to acknowledge its own obligation under the leases. One cannot read this letter as a repudiation.

...

In sum, there is no evidence that Hood Brothers has been injured in any way by anyone repudiating the leases. To the contrary, USCO wants only to keep the leases in force, and Hood Brothers wants to find a technical breach to help it out of a bad bargain. There is no legal basis to support the district court's grant of summary judgment for Hood Brothers. Moreover, the record supports summary judgment for USCO. We REVERSE and REMAND with instructions for the district court to enter judgment for USCO.